# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BENEDICT MOHIT,

Plaintiff,

v.  Case No: 8:18-cv-1775-T-17JSS

CITY OF HAINES CITY, a political
Subdivision of the State of Florida,

Defendant.
_____/

### FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

The Plaintiff files suit against the Defendant for unlawfully denying him, by ordinance, regulation, resolution, rule, and policy, of the use of his property for the conduct of bona fide commercial crop and animal production activities and farming operations, where his property is a pre-existing farm firm classified as agricultural lands pursuant to §193.461, Fla. Stat., and where he intends to conduct all agricultural purposes, farm uses, and farm operations on his farm in accordance with best management practices and rules as adopted under Chapter 120, Florida Administrative Code, and/or in accordance with rules or codes adopted by agencies of the Federal Government of the United States of America.

### PARTIES

1. The Plaintiff is Benedict Mohit ("Mohit"), appearing *pro se,* and his property, a farm firm, is located in the R-2 zoned residential district of the City of Haines City, Florida.

2. The Defendant is the City of Haines City, a Political Subdivision of the State of Florida ("the City"), located in Haines City, Polk County, Florida.

## JURISDICTION

3. The federal statutes and/or provisions of the United States Constitution that are at issue in this case are (i) Fifth Amendment, 42 U.S.C. §1983, (ii) Fourteenth Amendment, and (iii) Federal Fair Housing Act, 42 U.S.C. §§ 3601-3619, Title VIII of the Civil Rights Act.

4. The Plaintiff's property is located in Haines City, Polk County, Florida.

## GENERAL ALLEGATIONS AND STATEMENT OF FACTS

5. In May 2012, Mohit purchased a 20-acre abandoned farm annexed from Polk County and now located in the R-2 zoned residential district of the City of Haines City, Polk County, Florida, and he immediately began bona fide commercial pasture and growing of hay, spending about $6,000.00 to establish the hay crop.

6. On January 01, 2013, as a direct result of the pre-existing farm uses, Mohit's farm firm was classified as agricultural lands pursuant to §193.461, Fla. Stat., (*Greenbelt Law*). Exhibit 1.

7. Section 193.461, Fla. Stat., states that: "(3b) The term '<u>bona fide</u> agricultural purposes' means <u>good faith commercial agricultural use</u> of the land, and (5) The term 'agricultural purposes' includes, but is not limited to, horticulture; floriculture; viticulture; forestry; dairy; livestock; poultry; bee; pisciculture; fish; aquaculture; algaculture; sod farming; and all forms of farm products as defined in s.823.14 (3) and farm production."

8. Mohit is and has always been desirous of conducting good faith commercial agricultural purposes including, but not limited to, livestock, apiculture (*bee*), poultry, and citrus, on his *Greenbelt* farm via the implementation of best management practices (BMPs) and rules as

adopted under Ch. 120, Florida Administrative Code (FAC), and via the implementation of rules or codes as adopted by agencies of the U.S. Federal Government.

9. Pursuant to §586.10, §586.055, §163.3194 (5), §163.3162 (3), and §823.14 (4b), (6), Fla. Stat., the State of Florida pre-empts the conduct of (*bona fide*) good faith commercial agricultural purposes on *Greenbelt* farms, when such farm purposes are regulated by state rules or federal rules or codes. *J-II Investments, Inc. v. Leon County*, 908 So.2d 1140 (Fla. Dist. Ct. App. 2005).

10. Pursuant to §163.3164 (14) and §380.04 (3e), Fla. Stat., local governments lack jurisdiction to require a _development_ permit for the conduct of bona fide commercial agricultural purposes on *Greenbelt* farms. *Love PGI Partners v. Schultz* 706 So.2d 887 (Fla. 5th DCA 1998).

11. Agricultural purposes regulated by BMPs and rules adopted under Ch. 120, FAC include; Florida Dairies, Rule 5M-17 adopted on 1/10/2016; Florida Poultry, Rule 5M-19, adopted on 8/25/2016; Aquaculture Rule 5L-3.004, adopted on 1/9/2017; Apiculture, Rule 5B-54.0105; Vegetable and Agronomic Crops (hay), Rule 5M-8; Cow/Calf Operations (livestock grazing), Rule 5M-11, adopted in 2009; Equine Operations, Rule 5M-14, adopted on 3/15/12; Silviculture (forestry), Rule 5I-6, adopted in 2004; and Citrus, Rule 5M-16 and Rule 5M-5, adopted in 2005. Exhibit 2.

12. The USEPA regulates and permits the conduct of feed lot operations and serval farm uses, including poultry through EPA 833-F-02-008, Exhibit 3; and the U.S. Department of Agriculture (USDA) regulates numerous farm operations, including the conduct of livestock grazing through the NRCS Practice Code 528, Exhibit 3a.

13. The City derives its authority to adopt and enforce land _development_ regulations via §166, Fla. Stat., the "Municipal Home Rule Powers Act"; and the City derives 'home rule' powers via Article VIII, section 2(b) Fla. Stat.; but the Supreme Court of Florida finds that, home rule

powers granted under Article VIII, section 2(b) of the Florida Constitution provides that <u>municipal powers are subject to limitation</u> "as otherwise provided by law" AND the Supreme Court reiterated the well-established principle that municipalities may not regulate subjects that are expressly pre-empted by State law, *City of Palm Bay v. Wells Fargo Bank*, N.A., No. SC11-830 (Fla. May 16, 2013); AND the Supreme Court stated that, "In Florida, a municipality is given broad authority to enact ordinances under its municipal home rule powers but <u>municipal ordinances must yield to state statutes</u>". *City of Orlando, Florida v. Michael Udowychenko, et al.*, (June 12, 2014).

14. On July 05, 2012, the City adopted its current land development regulations (LDR), Ordinance No. 12-1424, in which Sec. 5.6.3. (B) specifies the permitted uses in the R-2 district as: single family dwellings, public recreational facilities, schools and colleges, houses of worship, and cemeteries; Sec. 5.6.3. (D4) prohibits any use not specifically included in Sec. 5.6.3. (B); and Ordinance No. 12-1424 does not expressly grant an exception or exemption for the conduct of bona fide commercial agricultural purposes in the R-2 district, even when such agricultural purposes are regulated by state rules or federal rules or codes. Exhibit 4.

15. From May 2012 to July 05, 2012, the City, by land development regulations, did not permit the conduct of bona fide agricultural purposes or farm production activities on any farm located in its R-2 zoned residential district, including Mohit's farm.

16. Section 163.3162 (3), enacted in 2002 and amended in 2011 and 2012, states in part that, "A governmental entity may not exercise any of its powers to <u>adopt</u> or <u>enforce</u> any ordinance (*including any zoning ordinance*), regulation, <u>resolution</u>, rule, or policy to prohibit, restrict, or otherwise limit bona fide agricultural purposes on *Greenbelt* farms, if those agricultural purposes are regulated by state or federal rules." *J-II Investments, Inc. v. Leon County*.

17. In 2005, Florida First District Court of Appeal finds that, **"**The plain, unambiguous terms of section 163.3162 (4) Fla. Stat., prevent counties from **adopting** ordinances relating to agriculture. A statute must be given its plain and obvious meaning. *McLaughlin v. State,* 721 So.2d 1170, 1172 (Fla.1998).**"** *J-II Investments, Inc. v. Leon County.*

18. In 1999, the Supreme Court of Florida disapproved *Robbins v. Yusem* but upheld *Love PGI Partners v. Schultz*; and Justice J. Anstead in his dissenting opinion stated that, "Today, the use of land is largely controlled by local zoning laws, under a land use planning scheme *mandated* by the state to be developed and enforced by local government. Obviously, that comprehensive scheme can hardly work if landowners (*farmers*) are free to ignore zoning laws in their use of land. However, that is precisely the import of our ruling today. *Schultz v. LOVE PGI PARTNERS, LP*, 731 So. 2d 1270 (Fla. 1999).

19. To clarify this paradoxical and anomalous *disapproval* of *Robbins* by the Supreme Court of Florida, in 2000, Florida Legislature amended §823.14, Fla. Stat., The Right to Farm Act, and in 2002, adopted §163.3162, Fla. Stat., The Agricultural Lands and Practices Act; to preempt the governing of good faith commercial agricultural purposes on *Greenbelt* lands.

20. From July 05, 2012, to August 06, 2015, the City, by LDR, Sec. 5-2, 5.6.3. (B), and 5.6.3. (D4), did not permit the conduct of any bona fide agricultural purposes or any farm production activities in its R-2 district in which Mohit's *Greenbelt* farm is located.

21. From May 2012 to August 2015, the City, via Ordinance 12-1424, Sec. 5.2, 5.6.3. (B), and 5.6.3 (D4), denied Mohit of all economically beneficial and productive use of his property, denied him of the right to use his property for the conduct of any and all bona fide agricultural purposes and farm production activities, and deprived him of all potential farm income, thereby, rendering his *Greenbelt* farm worthless.

22. On July 01, 2014, Mohit met with City officials regarding his pre-existing and proposed agricultural purposes; City officials threatened Mohit with fines, a lien on his property, and to shut his farm down if he continued his (*Greenbelt)* agricultural activities or if he was to keep any animals on his property without a conditional use development permit; and the officials stated that agriculture was not a permitted use in the R-2 residential zoned district, and therefore, the conduct of any agricultural purpose by Mohit would be unlawful.

23. At the July 01, 2014 meeting, the City enforced its LDR requiring that Mohit apply for a development permit which he did <u>under protest</u>, bringing to the City's attention the Polk County Property Appraiser's report, including appropriate case law on agricultural classification, and <u>he wrote at the top of the application that it was in violation of state law</u>; City officials stated that the City has a "charter ordinance" and therefore does not have to comply with the statute or the case law cited, and that the City can adopt and enforce "stricter" provisions for farm operations than state law; the City enforced its LDR in spite of being placed on notice that its LDR is in conflict with §823.14, Fla. Stat.; and about three (3) months later, after having his *feathers ruffled*, Mohit withdrew his land *development* permit application.

24. In October 2014, Mohit filed suit against the City in state court for unlawfully prohibiting his proposed livestock grazing on his farm, and as a result, on May 26, 2015, the state trial court ordered Mohit to submit a new application to the City for a conditional use permit to pursue livestock grazing on his existing farm which he did, *mooing* <u>under protest</u>, citing case law and state laws. Exhibit 5.

25. Section 163.3162 (3), Fla. Stat., states in part that, "A governmental entity may not exercise any of its powers to <u>adopt or enforce</u> any ordinance, ***resolution*** or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as

agricultural land pursuant to s.193.461, if such activity is regulated by a best management practice adopted as a rule under chapter 120, FAC; or if such activity is expressly regulated by the USEPA or the USDA;" and livestock grazing is regulated by (i) Rule 5M-11, Ch.120, FAC, and (ii) Code 528, NRCS, USDA.

26. On August 06, 2015, the City adopted <u>Resolution</u> No. 15-1153, a conditional use *development* permit for Mohit to conduct specific agricultural activities on his existing *Greenbelt* farm with provisions stipulating: (i) a maximum of twenty cattle or five horses; (ii) the express prohibition of animal feed lot operations and swine production; and (iii) limiting all bona fide commercial agricultural purposes, including horticulture and forestry, to <u>ten years</u>. Exhibit 6.

27. Sec. 5.6.3. (E) of the City's LDR requires a "conditional use <u>development</u> permit" for the conduct of four specific agricultural purposes namely: (a) citrus, (b) horticulture, (c) forestry, and (d) grazing, pasture and growing hay; and these four farm operations are each regulated by rules adopted under Ch. 120, FAC, namely: (a) citrus, Rule 5M-16, (b) horticulture, Rule 5M-6, (c) forestry, Rule 5I-6, and (d) livestock grazing, Rule 5M-11; hay, 5M-8.

28. Florida Fifth District Court of Appeal finds that pursuant to §163.3164 (14) and §380.04 (3e), Fla. Stat., the conduct of bona fide agricultural purposes is one of the eight activities <u>exempted</u> from the "*development*" of land; and the Fifth DCA <u>reversed the trial court</u> which *incorrectly* concluded that the farmer, whose cattle grazing activity was located on residential zoned lands, must comply with the local land development code by having his agricultural activity properly permitted, *Love PGI Partners v. Schultz* 706 So.2d 887 (Fla. 5th DCA 1998); and on *Schultz's* appeal, the Supreme Court of Florida upheld the findings of the *Love PGI* court.

29. On October 20, 2015, in the trial court transcript the Court states: "The City may not regulate agricultural uses if the activities are the subject of adopted best management practices; -- and

7

the legislature was making a point that if agricultural activities are regulated by the state then the city and the county doesn't have anything to do with that -- Can't regulate it" -- AND the Court asks the City Attorney: "So you concede you are subject to the statutes. The regulations are subject to the statutes?" AND the City Attorney replied: "Yes, sir." -- AND the City Attorney stated: "The City staff was not up to date on the status of the statutes and what they meant, -- I will admit that" AND the Court replied: "I'm pretty much sure they weren't."

30. In the trial court transcript, the Court asks the City Attorney: "Let me ask Mr. Reilly what is the effect of having it (*Resolution 15-1153*) for 10 years -- What is the goal -- or the aim you are seeking?" AND City Attorney replied: "The idea was to have some basis for it to come back before the City." AND the Court responds: "Come back to the City towards what end? Towards prohibiting an activity that's contemplated under the statutes? -- But under the statutes, if it's appropriately located now, -- there could be condominium high-rises around it tomorrow, and that's not going to affect its ability to be – to remain there under the current statutory scheme. The uses surrounding it, whether they change or not, is going to be irrelevant to that determination. Do you understand what I am saying?" Mr. Reilly responds: "Yes, sir."

31. By order dated November 30, 2015, the state trial court finds that, "Pursuant to § 823.14 and §163.3162, Fla. Stat., local governments may not adopt any ordinance, *resolution*, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural where such activity is regulated through implemented best management practices developed by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, and adopted under Chapter 120 as part of a statewide or regional program." *Mohit v. City of Haines City,* Case No. 2014-CA-004014. Exhibit 1.

32. Plaintiff Mohit made *Jennings* reservations on his first complaint and on his amended complaints in the state court affirming that, "Plaintiff wish to reserve his constitutional claims and to preserve access to the federal courts for subsequent litigation by making a reservation on the state record as to the disposition of the entire case by the state courts;" and "In *Jennings v. Caddo Parish School Bd.,* 531 F.2d 1331 (5th Cir.), the Court held that one need only "reserve her constitutional claims for subsequent litigation in federal court" by "making on the state record a reservation as to the disposition of the entire case by the state courts" to preserve access to a federal forum," *Fields v. Sarasota Manatee Airport Authority*, 953 F.2d 1299 (11th Cir. 1992); and the state court's June 23, 2016, order finds that Counts VI, VII, and X are dismissed <u>without prejudice</u>, because these counts seek to state a cause of action for a regulatory taking which Plaintiff reserves for adjudication by the federal court.

33. On Mohit's appeal, Florida Second District Court of Appeal, by order dated April 19, 2017, finds that, "The trial court's June 23, 2016, order dismisses <u>without prejudice</u> counts VI, VII, X, XI, and XII, a circumstance that would defeat finality as to these counts," Exhibit 7; the Appeal Court reviewed the state trial court's final judgement order dated April 24, 2017, without making a final determination on these remaining counts; and the Appeal Court denied the City's motion to supplement the record after the final judgement order of April 24, 2017.

34. Pursuant to §§823.14, 163.3162, 193.461, and 604.001, Fla. Stat., the Florida legislature finds that, "Agricultural lands constitute unique and <u>irreplaceable resources of statewide importance;</u> and that the encouragement, development, improvement, and preservation of agriculture will result in a <u>general benefit to the health, safety, and welfare of the people of the state;</u>" and pursuant to §823.14, Florida Right to Farm Act,  Florida Legislative Findings and Purpose --

states that, "It is the purpose of this act to protect reasonable agricultural activities conducted on farm land from nuisance suits."

35. Mohit is and has always been desirous of building his family home on his *Greenbelt* farm located in Haines City with revenues from his farm but to date he has not earned any revenues; he owns two additional *Greenbelt* farms in central Florida; he is educated in agricultural sciences and attended Tuskegee University; he is a Florida licensed and USDA accredited veterinarian; and he has more than forty (40) years experience in the agricultural *field*.

36. Section 163.3162, Fla. Stat., (2013), states in part that:

> (1) LEGISLATIVE FINDINGS AND PURPOSE ….. It is the <u>purpose</u> of this act to protect reasonable agricultural activities conducted on farm lands from <u>duplicative regulation</u>.
>
> (3) DUPLICATION OF REGULATION. -- Except as otherwise provided in this section and s.487.051 (2), and notwithstanding any other law, including any provision of chapter 125 or this chapter:
>
> (a)   A governmental entity <u>may not exercise any of its powers to adopt</u> or enforce any <u>ordinance</u>, <u>resolution</u>, regulation, rule, or <u>policy</u> to <u>prohibit</u>, restrict, regulate, or otherwise <u>limit</u> an activity of a bona fide farm operation on land classified as agricultural land pursuant to s.193.461, if such activity is regulated through implemented best management practices, interim measures, or regulations adopted as rules under chapter 120 by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, or a water management district as part of a statewide or regional program; or if such activity is expressly regulated by the United States Department of Agriculture, the United States Army Corps of Engineers, or the United States Environmental Protection Agency.

37. Section 586.10, Fla. Stat., Florida Legislature declares that:

> The authority to regulate, inspect, and permit managed honeybee colonies and to adopt rules on the placement and location of registered inspected managed honeybee colonies is <u>preempted</u> to the state through the department and supersedes any related ordinance adopted by a county, municipality, or political subdivision thereof.

38. Section 586.055, Fla. Stat., Florida Legislature declares that:

> An <u>apiary</u> may be located on lands classified as agricultural under s.193.461, Fla. Stat.

10

39. Florida Statutes, §604.001, Public policy with respect to agricultural production states that:

> The Legislature declares that: (1) It is the public policy of this state and the purpose of this act to achieve and maintain the production of agricultural commodities for food and fiber as an essential element for the survival of mankind. (2) The production of agricultural commodities in this state is a large and basic industry that is important to the health and welfare of the people and to the economy of the state. (5) <u>It is important to the health and welfare of the people of this state and to the economy of the state that additional problems are not created for growers and ranchers engaged in the Florida agricultural industry by laws and regulations that cause, or tend to cause, agricultural production to become inefficient or unprofitable.</u> (6) The laws and regulations that have caused problems for agricultural production in this state have been due primarily to a lack of adequate and informed consideration of the adverse impact such laws and regulations would have on efficient and profitable agricultural production in this state."

40. City's land development regulations, adopted in July 2012, states as follows:

> Sec. 5-2: It shall be <u>unlawful</u> for any person to keep or cause to be kept or to have in his possession or under his custody or control within one hundred (100) yards of any neighboring house, abode, or habitation, within the city limits, any <u>chickens, ducks, guineas, quail, pigeon, partridge or pheasant or the like</u>; and it shall be <u>unlawful</u> for any person to keep or cause to be kept or have in his possession, or under his custody and control, any <u>pig, goat, sheep, horse, cow, cattle, or any tamed or captive wild animal</u> or reptile within the city limits; provided, any person maintaining any such animals or fowl prior to September 7, 1961, shall be permitted to continue to keep the same animals or fowls only so long as they shall maintain the same in an enclosure and in such a manner as not to become a nuisance.
>
> Sec. 5.6.3. (B): Permitted uses in R-2 Residential District (Exhibit 4):
> Family dwellings; public recreational facilities; schools and colleges; houses of worship; and cemeteries.
>
> Sec. 5.6.3. (D4) prohibits any use not specifically permitted by 5.6.3. (B).

## COUNT I: <u>REGULATORY TAKINGS OF MOHIT'S FARM FIRM WITHOUT JUST COMPENSATION</u>

41. Mohit re-alleges and adopts by reference paragraphs 1 through 40 above.

42. Mohit brings Count I against the City, alleging a taking of his property without just compensation, in violation of the Fifth Amendment and of the Fourteenth Amendment to the United States Constitution.

43. From May 2012 to August 06, 2015, the City, by LDR, prohibited the conduct of all bona fide agricultural purposes and all commercial farm uses in its R-2 district in which Mohit's *Greenbelt* farm is located, thus denying him of all economically beneficial and productive use of his property, and depriving him of all farm revenues, thereby rendering his farm worthless.

44. State law appears to provide a process for obtaining just compensation for the taking of Mohit's property, but due to state court interpretation, the process is inadequate; and Mohit reserved his constitutional claims for subsequent litigation in federal court by making on the state record a *Jennings* reservation as to the disposition of the entire case by the state courts.

45. Mohit has a legitimate constitutional and statutory right to use his *Greenbelt* farm for the conduct of bona fide commercial agricultural purposes, he expects to obtain a profit on his farm operations, and to use those profits for financing the construction of his family home.

46. In 2005, Florida First District Court of Appeal finds that, "The plain, unambiguous terms of section 163.3162(4) Fla. Stat., prevent counties from adopting ordinances relating to agriculture." *J-II Investments, Inc. v. Leon County*.

47. Florida Fourth District Court of Appeal finds that, "[T]he Right to Farm Act provisions restricting local government from adopting ordinances restricting farming activities became effective on June 16, 2000." *Wilson v. Palm Beach County*, 62 So. 3d 1247 (Fla. Dist. Ct. App. 2011).

48. Section 163.3164 (14), Fla. Stat, states that, "Development" has the same meaning as in s. 380.04;" and §380.04 (3) Fla. Stat., states that, "The following operations or uses shall not

be taken for the purpose of this chapter to involve "development" as defined in this section: (e) The use of any land for the purpose of growing plants, crops, trees, and other agricultural or forestry products; raising livestock; or for other agricultural purposes."

49. In *Love PGI,* Florida Fifth District Court of Appeal finds that pursuant to 163.3164 (14), and §380.04 (3) Fla. Stat., <u>local governments lacks jurisdiction to require a *development* permit for the conduct of a bona fide agricultural use</u>; and the Appeal Court reversed the trial court which had incorrectly found that the farmer must comply with the local LDR, adopted pursuant to chapter 163, to have his cattle grazing activity properly permitted. *Love PGI Partners v. Schultz* 706 So.2d 887 (Fla. 5th DCA 1998).

50. Mohit has suffered injury-in-fact because of constraints placed on the use of his property by the City through its LDR and Resolution, and he has suffered injury-in-fact that is concrete and actual because the City's land development regulations have rendered Mohit's pre-existing and proposed bona fide commercial *Greenbelt* farming activities arguably, unlawful.

### COUNT II: <u>VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF THE LAW</u>

51. Mohit re-alleges and adopts by reference paragraphs 1 through 40 above.

52. Mohit brings Count II against the City for intentionally treating his conduct of bona fide commercial farm operations, via LDR and more so via a development permit, Resolution No. 15-1153, differently from other similarly situated farms, including Grullon's, *J-II Investments*, *Love PGI*, *Wilson*, and disapproved *Robbins*, for which there is no rational basis for the disparate treatment, thereby, denying him of due process and equal protection of the law afforded under the Fifth and Fourteenth Amendments to the U. S. Constitution.

53. Pursuant to §163.3164 (14) and §380.04 (3e), Fla. Stat., the City lacks jurisdiction to require a conditional use *development* permit for farmers to conduct bona fide commercial agricultural

13

purposes on their existing *Greenbelt* farms; and pursuant to §586.10, §586.055, §163.3194 (5), §163.3162 (3) and §823.14 (4b), (6), Fla. Stat., the state preempts the governing of bona fide commercial agricultural purposes on *Greenbelt* farms, including Mohit's *Greenbelt* farm.

54. The City, by Sec. 5.6.3. (E) of its LDR and by policy, requires a development permit for the express conduct of horticulture, silviculture, citrus, and livestock grazing, and prohibiting all other farm operations in its R-2 district in which Mohit's <u>*Greenbelt*</u> farm is located, and each of these agricultural purposes and farm operations are regulated by rules and/or codes adopted by the state and/or the federal government. Exhibit 2.

55. The provisions of City's Resolution No. 15-1153: (i) are intentionally spiteful to Mohit because he brought suit against the City alleging that the challenged regulations are in conflict with the subject state laws, (ii) the provisions do not advance the State of Florida's interest in bona fide commercial agriculture, (iii) they are irrational, arbitrary, and unlawful, and (iv) the City acted either with the intent to deprive Mohit of his rights or in reckless disregard of his rights.

56. The City knew that it's LDR and the provisions of Resolution 15-1153 unlawfully restrict Mohit's proposed farm uses, and the City purposely enforced the Resolution to circumvent the subject state laws as they applied to his existing and proposed farm operations compared to the number and species of animals permitted on other similarly situated farms. Exhibit 8.

57. <u>The Ledger</u>, published Saturday July 31, 2010, stated that: "Polk County Property Appraiser's decision to classify certain residential zoned lands as agriculture according to §193.46, surprised officials in cities whose revenue was being affected by reduced taxes;" in response, Mr. Richard Greenwood, Haines City Community Development Director said "<u>that's ridiculous</u>;" and Mr. Greenwood said the "City's land development regulations don't allow agricultural operations in residential areas."

58. Prior to this suit, the City was placed on notice that its challenged regulations, resolution, and policy, were in violation of state law, and in spite of admitting to the state court that some of its regulations were in conflict with the subject state laws, the City enforces its challenged regulations and Resolution on Mohit's proposed bona fide agricultural purposes.

59. City, by resolution, granted Mohit's neighbor on the east, Mr. Grullon, the right to keep an <u>unlimited</u> number of animals and of <u>any species</u> on his 40-acre farm, Exhibit 8, even though Mr. Grullon stated on his application that he was desirous of keeping 100 animals. Exhibit 9.

60. The farms on the north side of Mohit's farm are located in Polk County, a political sub-division of the State of Florida, and Chapter 2 - Land Use Districts and Regulations, Polk County LDR:

    a. Sec. 222 (A): General Farming -- Nothing herein shall prevent the use of any land for agricultural purposes, or the construction and use of buildings or structures incidental to that purpose. No conditional use permit or certificate shall be required for any new agricultural building or structure.

    b. Sec. 222 (D): Farming, General and Animal Grazing -- Nothing herein shall prevent the use of any land for farming, general and animal grazing for bona fide agricultural purposes, or the good faith commercial agricultural use of land, as defined in Section 193.461, F.S. <u>This shall be allowed in all land use classifications</u>.

    c. Livestock and Fowl in Residential Neighborhoods: This section is intended to address the balance between quality of life for residents and responsible animal husbandry in residential neighborhoods. These provisions do not apply to the good faith commercial agricultural use of land (bona fide agricultural purposes), as defined in Section 193.461., F.S.

61. The City Code of Ordinances, Ch. 5 -- Animals and Fowl -- County animal control ordinance to be enforced in city. The city hereby certifies that:

    a. The municipality has no charter provision or ordinance which is in conflict with the county's animal control ordinance, and

    b. The municipality desires to be subject to the provisions of such ordinance.

62. Scientific data does not support the City's restrictions, limitations, and disparate treatment of Mohit's farm operations with other similarly situated farms; and the City staff lacks expertise and jurisdiction to determine the minimum farm product or farm operation necessary to maintain or acquire *Greenbelt* status.

## COUNT III: <u>VIOLATION OF THE FAIR HOUSING ACT</u>

63. Mohit re-alleges and adopts by reference paragraphs 1 through 40 above.

64. Mohit brings Count III against the City for disparate treatment, via the challenged LDR and Resolution 15-1153, on the use of his vacant *Greenbelt* lands for which there is no rational basis, thereby reducing his farm products and revenues resulting in him not being able to locate and construct his family home on his farm, in violation of the Federal Fair Housing Act, 42 U.S.C. Sections 3601-3619, Title VIII of the Civil Rights Act.

65. "Farming is a hard way to make a living. Small farmers operate at the whim of conditions completely beyond their control; weather conditions from year to year and marketable prices of crops to a large extent determine whether an individual farmer will make a profit, barely break even or lose money. -- The farms of many African American farmers were foreclosed upon, and they were forced out of farming. Those who managed to stay in farming often were subject to humiliation and degradation at the hands of the county commissioners and were forced to stand by powerless, as white farmers received preferential treatment. As one of plaintiffs' lawyers, Mr. J. L. Chestnut, aptly put it, African American farmers "learned the hard way that though the rules and the law may be colorblind, people are not."" *Pigford v. Glickman*, 206 F.3d 1212 (D.C. Cir. 2000).

66. Since August 05, 2015, through the time of filing this complaint, Mohit has been and continues to be subjected to the alleged discriminatory misconduct by the City through enforcement of the provisions of its Resolution 15-1153, which expires ten (10) years from August 05, 2015.

67. Mohit belongs to the protected classes of the Fair Housing Act, by virtue of his race, color, religion, and national origin; his skin is dark in color and he is originally from the Caribbean.

68. City, by resolution, granted Mohit's neighbor, Mr. Grullon, the right to keep an <u>unlimited</u> number of animals and of <u>any species</u> on his 40-acre farm, Exhibit 8, even though Mr. Grullon stated on his application that he was desirous of keeping 100 animals. Exhibit 9.

69. Mohit, through a trial court order made a new application under protest, for a development permit to conduct livestock grazing on his *Greenbelt* farm, and at an earlier meeting with City officials they threatened him with a denial of a permit unless he specified a *reasonable number* of each livestock species he wanted to bring to his farm on a rotational basis, keeping only one species at a time. Exhibit 10.

70. The City, by Resolution No. 15-1153, permits a maximum of 5 horses or 20 cattle on Mohit's 20-acre farm; the resolution does not permit him to keep any other species of animals except for cattle, goats, or horses, one species at a time; the resolution limits Mohit's farming activities to ten (10) years; and the resolution is currently in effect. Exhibit 6.

71. City officials knew that by restricting the number and species of animals on Mohit's *Greenbelt* farm that he would not be able to generate sufficient profits to finance the construction of his home, they knew the 10-year limit on all farm uses would economically strangle capital investment and economic viability of his farm, and thus, prevent him from obtaining a home mortgage and it would eventually force him to sell his lands.

72. Mohit believes that the City enforced its ordinance and resolution in a manner to discriminate against him in the use of his vacant land because of his race, color of his skin, and his national origin thereby, denying him the financial opportunity to build his family home on his farm and as a result, he and his family continues to live in an apartment above his veterinary office.

## **RELIEF**

WHEREFORE, Plaintiff Mohit demands judgment for (i) just compensation and damages to be determined by the court for the taking of his property, (ii) damages to be determined by the court for violation of his due process and equal protection of the law, (iii) damages for discriminating against him in the use of his land to build his family home, and (iv) any other relief determined by this honorable court to be fair and just.

DATED: October 14, 2018.

/s/ *Benedict Mohit*
Benedict Mohit, Pro Se,
1520 Sunrise Plaza Drive,
Clermont, Fl. 34714.
Tel: 407-579-8337
Email: dvmohits@gmail.com

I HEREBY CERTIFY that on October 14, 2018, I electronically filed the forgoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Ms. Linda Edwards and Ms. Kayla Rady, Attorneys for the City of Haines City.

/s/ *Benedict Mohit*
Benedict Mohit, Pro Se,