UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENEDICT MOHIT,

     Plaintiff,

v.                                     Case No: 8:18-cv-1775-T-17JSS

CITY OF HAINES CITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Dispositive Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendant, the City of Haines City. (Dkt. 26) Plaintiff, Benedict Mohit, opposes the Motion. (Dkt. 27.) For the reasons set forth below, it is recommended that the Motion be granted in part and denied in part.

## BACKGROUND

### A. The State Court Action

In May 2012, Plaintiff purchased a residentially zoned property within the City and immediately began using the property as a farm. (Dkt. 27 at 5.) Less than two months later, in July 2012, the City adopted its current land development regulations in the form of Ordinance No. 12-1424 ("LDR"), which, in pertinent part, prohibits any person from keeping farm animals within the City limits and requires a conditional use permit to use residentially zoned property for agricultural purposes. (Dkt. 23-1 at 7-8.)

On October 3, 2014, Plaintiff, proceeding pro se, filed suit in the Tenth Judicial Circuit in and for Polk County, Florida, alleging that the City had unlawfully prohibited him from grazing livestock on his property. (Dkt. 23 ¶ 24; Dkt. 23-1 at 11; Dkt. 26-1.) In May 2015, Plaintiff, as

ordered by the state trial court, submitted an application for a conditional use permit to pursue livestock grazing on the property. (Dkt. 23 ¶ 24; Dkt. 23-1 at 9, 21.) On August 6, 2015, the City Commission passed Resolution No. 15-1153 (the "Conditional Use Permit"), which grants Plaintiff permission to conduct agricultural activities on his property subject to certain conditions. (Dkt. 23 ¶ 26; Dkt. 23-1 at 11-14.) Specifically, the Conditional Use Permit authorizes Plaintiff to use his property for "bona fide agricultural purposes" on the condition that he is permitted to maintain a maximum of 20 cattle, 20 goats, and 5 horses. (Dkt. 23-1 at 12-13.) The conditional use permit prohibits Plaintiff from maintaining swine or feed lot operations on the property. (*Id.*) Notably, the scope and restrictions contained in the Conditional Use Permit mirror those set forth in Plaintiff's application. (Dkt. 26-2 at 31-35.)

After obtaining the Conditional Use Permit, Plaintiff resumed his lawsuit against the City. In his Third Amended Complaint, Plaintiff alleged that:

> (1) The LDR violated §§ 380.04, 823.14, 163.3162(3)(a), and 604.50, Fla. Stat. (Counts I, II, III, IV, and V);
>
> (2) The adoption of the LDR violated the Due Process Clause of United States Constitution and the Eminent Domain Clause, Art. X, § 6(a), of the Florida Constitution (Count VI);
>
> (3) The LDR constituted a regulatory taking without just compensation in violation of the United States Constitution and the Florida Constitution (Counts VII and X);
>
> (4) The Conditional Use Permit violated §§ 823.14(4)(a), 823.14(6), and 163.3162(3)(a), Fla. Stat. (Counts VIII, IX, and XII);
>
> (5) The LDR and the Conditional Use Permit violated § 586.10, Fla. Stat. (Count XI); and
>
> (6) City officials were negligent in violating Florida law (Count XIII).

(Dkt. 26-2 ¶¶ 42-104.)

In Paragraph 40 of the Third Amended Complaint, Plaintiff alleged that he "wish[ed] to reserve his constitutional claims and to preserve access to the federal courts for subsequent litigation by making a reservation on the state record as to the disposition of the entire case by the state courts."  (Dkt. 26-2 ¶ 40.)

On June 23, 2016, the state trial court granted in part the City's Motion to Dismiss the Third Amended Complaint.  (Dkt. 26-3.)  In doing so, the state trial court dismissed without prejudice Plaintiff's federal and state law takings claims (Counts VI, VII, and X), stating as follows:

> Counts VI, VII, and X are **DISMISSED** without prejudice.  These Counts apparently seek to state a cause of action for regulatory taking yet fall short of the standard for pleadings set forth in Fla. R. Civ. Pro. 1.110 and for the apparent irreconcilable inconsistency with Paragraph 40 of Plaintiff's Third Amended Complaint.  This Court may not apprise a *pro se* litigant as to the extent of his weak points and may not assist him to the detriment of the opposing party.

(Dkt. 26-3 at 1) (emphasis in original).  In the same order, the state trial court also dismissed without prejudice Counts XI and XIII.  (Dkt. 26-3 at 1-2.)

On November 18, 2016, the state trial court granted summary judgment in favor of the City as to Counts II, III, IV, VIII, IX, and XII.  (Dkt. 26-4.)  Thus, as of November 18, 2016, only Counts I and V of Plaintiff's Third Amended Complaint remained pending.  During a hearing on February 22, 2017, the state trial court discussed the status of the various counts within Plaintiff's Third Amended Complaint.  (Dkt. 26-5.)  During that hearing, Plaintiff indicated that he had chosen not to amend the counts previously dismissed without prejudice (Counts VI, VII, X, XI, and XIII). (Dkt. 26-5 at 2.)  The following month, on March 16, 2017, the state trial court entered an order granting summary judgment as to the remaining claims (Counts I and V) in the Third

Amended Complaint.  (Dkt. 26-6.)  The state trial court entered final judgment in favor of the City on April 24, 2017.  (Dkt. 26-7.)

Plaintiff thereafter moved for leave to amend the previously dismissed counts (Counts VI, VII, X, XI, and XIII) of the Third Amended Complaint.  (Dkt. 28-8.)  On August 2, 2017, the state trial court denied the motion to amend, noting that it had previously entered final judgment in favor of the City and that "all judicial labor in this case at the trial court level has been concluded."  (Dkt. 28-8 at 2.)

In December 2016, while the case was pending in the state trial court, Plaintiff filed an appeal with the Second District Court of Appeal.  (Dkt. 26-9.)  Plaintiff initially challenged the state trial court's order granting summary judgment in favor of the City.  (Dkt. 26-9 at 1.)  The Second District Court of Appeal ultimately converted the appeal into one from the final judgment. (Dkt. 26-9 at 6.)  On January 24, 2018, the Second District Court of Appeal affirmed the final judgment in favor of the City without a written opinion.  *Mohit v. City of Haines City*, 242 So. 3d 348 (Fla. 2d DCA 2018).  Plaintiff sought further review in the Florida Supreme Court.  (Dkt. 26-8.)  On March 22, 2018, the Florida Supreme Court dismissed the appeal for lack of jurisdiction. *Mohit v. City of Haines City*, No. SC18-444, 2018 WL 1433044, at *1 (Fla. Mar. 22, 2018).

### B.  The Instant Action

On July 20, 2018, Plaintiff filed his Complaint for Violation of Civil Rights in this Court. (Dkt. 1.)  The City moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 6.)  Plaintiff thereafter sought, and was granted, leave to file an amended complaint, which Plaintiff filed on October 14, 2018.  (Dkts. 10, 21, 23.)  In Count I of the First Amended Complaint, Plaintiff asserts that the LDR and the Conditional Use Permit represent a regulatory taking without just compensation, in violation of the Fifth Amendment of the United

States Constitution.  (Dkt. 23 ¶¶ 42-50.)  In Count II, Plaintiff asserts that the LDR and the Conditional Use Permit violate the Due Process Clause and the Equal Protection Clause of the United States Constitution.  (Dkt. 23 ¶¶ 52-62.)  In Count III, Plaintiff asserts that the City's conduct violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* (Dkt. 23 ¶¶ 63-72.)

On October 29, 2018, the City filed its Motion.  (Dkt. 26.)  Plaintiff opposes the Motion. (Dkt. 27.)

## APPLICABLE STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept the plaintiff's allegations as true and construe the complaint in the plaintiff's favor.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  To survive a motion to dismiss, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, as the complaint must contain "enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  Although pro se pleadings are governed by less stringent standards than pleadings prepared by attorneys, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), pro se parties are still required to comply with minimum pleading standards set forth in the Federal Rules of Civil Procedure and this district's Local Rules.  *Grew v. Hopper*, No. 2:07-cv-550-FtM-34SPC, 2008 WL 114915, at *2 (M.D. Fla. Jan. 9, 2008); *see also Beckwith v. Bellsouth Telecomms., Inc.*, 146 Fed. Appx. 368, 371 (11th Cir. 2005) (per curiam) (citation omitted) (stating "[a]lthough we construe them liberally, pro se complaints also must comply with the procedural rules that govern pleadings").

## ANALYSIS

### A. Judicial Notice

As a preliminary matter, the Court addresses the propriety of taking judicial notice of the record of the state court action. Because the City's arguments rest in part on the pleadings and orders entered in the state court action, the City requests that the Court take judicial notice of those records. (Dkt. 26 at 2 n. 1.) Plaintiff has not objected to the City's request (Dkt. 27) and indeed relies on many of the same records. (Dkt. 27-1.) The Eleventh Circuit has acknowledged that "[c]ourts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n. 4 (11th Cir. 2015). Here, the Court finds that judicial notice of the prior state court proceedings is appropriate because the nature of the proceedings and the contents of the filings in that case may be accurately and readily determined from the state court's docket, the accuracy of which cannot reasonably be questioned. See Fed. R. Evid. 201(b)(2); *see also McClamma v. Remon*, 561 F. App'x 787, 789 (11th Cir. 2014) (taking judicial notice of documents in underlying criminal case "because these facts can be accurately and readily determined from the district court's docket, the accuracy of which cannot reasonably be questioned"). However, the Court will judicially notice the state court case for the limited purpose of recognizing the judicial act or acts that the case represents or the subject matter of that litigation. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). This type of judicial notice can be taken without converting the motion to dismiss to a motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. App'x. 52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)).

The Court further takes judicial notice of Haines City's Land Development Regulations, which have been relied on by both parties and are available online[1] and not reasonably subject to dispute. *See, e.g.*, *Romero v. Watson*, No. 1:08 CV 217-SPM-AK, 2009 WL 1361714, at *8 n. 4 (N.D. Fla. May 13, 2009) (taking judicial notice of 549 pages of land development regulations in ruling on a motion to dismiss).

## B.  Res Judicata

The City asserts that res judicata bars Counts II and III of Plaintiff's First Amended Complaint.  (Dkt. 26 at 11-14.)  In response, Plaintiff argues that res judicata does not apply because (1) the state trial court did not dispose of Plaintiff's federal claims (Counts VI, VII, and X) on the merits; (2) the state court's final judgment rested on alternative grounds; (3) the identity of Plaintiff's federal causes of action differs from the state court action; (4) the identity of the thing sued for differs from the state court action; and (5) invoking res judicata would defeat the ends of justice.  (Dkt. 27 at 10-16.)

Here, the state trial court dismissed Counts VI, VII, X, XI, and XIII of Plaintiff's Third Amended Complaint without prejudice.  (Dkt. 26-3 at 1.)  The counts dismissed without prejudice in the state court action included Counts VI, VII, and X, which contained Plaintiff's federal and state constitutional claims, including his takings claims.  (Dkt. 26-2 ¶¶ 65-72, 79-81.)  Under Florida law, a dismissal without prejudice does not operate as an adjudication on the merits.  *U.S. Bank Nat'l Ass'n v. Amaya*, 254 So. 3d 579, 583 (Fla. 4th DCA 2018) ("Generally, an involuntary dismissal without prejudice does not operate as an adjudication on the merits.").  However, the state court later entered summary judgment in favor of the City as to the remaining counts—all of which involved violations of the Florida Statutes—and thereafter entered a final judgment in favor

---

[1] City of Haines City, Fla., Land Dev. Regulations, *available at* https://library.municode.com/fl/ haines_city/codes/land_development_regulations_.

of the City.  (Dkts. 26-4, 26-6, 26-7.)  This Court must therefore determine whether the final

judgment as to Plaintiff's state law statutory claims precludes the federal claims Plaintiff now

asserts in this Court.  *See generally Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1210 (Fla. 4th DCA

2005) ("Because the final judgment in the prior case addressed only the whistle blower count, res

judicata does not bar the breach of contract and fraud in the inducement claims raised by Tyson in

his second complaint.").

      In determining whether to give preclusive effect to a state court judgment, a federal court

sitting in diversity jurisdiction must apply the res judicata principles of the state court.  *Amey, Inc.*

*v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985); *Arthur v. JP Morgan Chase*

*Bank, NA*, 569 Fed. Appx. 669, 676 (11th Cir. 2014) ("When evaluating the effect of a state court

judgment, we apply the preclusion law of the rendering state.").  In this case, a Florida state court

entered judgment against Plaintiff and in favor of the City.  (Dkt. 26-7.)  This Court therefore looks

to Florida law to determine the preclusive effect of that judgment.

      Under Florida law,

> A judgment on the merits rendered in a former suit between the same
> parties or their privies, upon the same cause of action, by a court of
> competent jurisdiction, is conclusive not only as to every matter
> which was offered and received to sustain or defeat the claim, *but*
> *as to every other matter which might with propriety have been*
> *litigated and determined in that action.*

*Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) (emphasis added).  For res

judicata to apply under Florida law, there must be:

> (1) identity of the thing sued for; (2) identity of the cause of
> action; (3) identity of the persons and parties to the action; (4)
> identity of the quality or capacity of the persons for or against
> whom the claim is made; and (5) the original claim was disposed
> on the merits.

*Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074 (11th Cir. 2013) (internal quotation marks and alteration omitted).  Notably, "a claim is not barred by res judicata simply because it could have been raised in the first action if it does not otherwise meet the four identities required by the doctrine."  *Harllee v. Procacci*, 154 So. 3d 1145, 1149 (Fla. 2d DCA 2014).

In this case, the third and fourth identities listed above are present in both actions.  Identity of the parties is present because the parties in this action are identical to the parties in the state court action.  For that reason, identity of the quality of the parties is also met since both parties had "the incentive to adequately litigate the claims in the same character or capacity." *Stockton v. Lansiquot*, 838 F.2d 1545, 1547 (11th Cir. 1988).  In addition, the first identity, identity of the thing sued for, is arguably present since Plaintiff has sought money damages in both actions as a result of the City's regulatory actions.  *See AMEC Civil, LLC v. State, Dep't of Transp.*, 41 So. 3d 235, 242 (Fla. 1st DCA 2010) (concluding that the "[i]dentity of the thing sued for" existed where the plaintiff sought damages in both actions) (quotation marks omitted).

However, after careful comparison of Plaintiff's Third Amended Complaint with his First Amended Complaint, the Court concludes that the second identity—identity of the cause of action—is not present in this case.  Under Florida law, "[c]laims are considered the 'same cause of action' if the facts essential to the maintenance of both actions are the same, that is, if the evidence in both cases is in essence the same." *Madura v. Countrywide Home Loans, Inc.*, 344 F. App'x 509, 517 (11th Cir. 2009); *see also Gordon v. Gordon*, 59 So. 2d 40, 47 (Fla. 1952) ("[T]he determining factor in deciding whether the cause of action asserted in the first suit was the same as that relied upon in the second action is whether the evidence necessary to sustain the latter suit is essentially the same as that which was produced in the former."); *Gold v. Bankier*, 840 So. 2d

395, 397 (Fla. 4th DCA 2003) ("Identity of the causes of action is established where the facts necessary to support both causes are identical.").

In Plaintiff's case, the facts essential to the maintenance of his federal claims differ significantly from those that were necessary to prove the claims adjudicated in the state court action.  Specifically, in the state court action, the state court entered final judgment on the merits as to Counts I, II, III, IV, V, VIII, IX, and XII.  (Dkt. 26-4.)  Each of those counts is based on an allegation that the City violated one of several Florida statutory provisions when it adopted the LDR and approved the Conditional Use Permit.  For example, Count I of Plaintiff's Third Amended Complaint alleged that the LDR violated the Land and Water Management Act, Fla. Stat. § 380.04 *et seq.* (Dkt. 26-2 ¶¶ 42-47.)

In comparison, in Count II of the First Amended Complaint, Plaintiff alleges that the City's regulatory actions violated the Due Process Clause and the Equal Protection Clause.  (Dkt. 23 ¶ 51-62.)  The Eleventh Circuit has defined a due process takings claim as "a claim that the application of the regulation goes so far and destroys the value of his or her property to such an extent that it has the same effect as a taking by eminent domain.  Such an application would be an invalid exercise of the police power."  *Eide v. Sarasota County*, 908 F.2d 716, 721 (11th Cir. 1990).  An "equal protection" claim, in the context of a zoning challenge, involves a claim "that the zoning denies [the plaintiff] equal protection of the laws, either because it treats a suspect class differently from others, because it affects a fundamental right, or because it treats a non-suspect class differently and is not rationally related to a legitimate government purpose."  *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1540 (11th Cir. 1991).  Thus, the facts necessary to support the claims Plaintiff has alleged in Count II of the First Amended Complaint are distinct from those necessary to support Plaintiff's claims in the state court action.

In addition, in Count III, Plaintiff alleges that the City's regulations violated the FHA because they were based on Plaintiff's status as a member of a protected class.  (Dkt. ¶¶ 63-72.) This claim necessarily involves facts that are distinct from those presented in the state court action, including whether Plaintiff is a member of a protected class and whether the City's regulatory actions were based on Plaintiff's status as a member of that protected class.  Although the facts of Plaintiff's federal claims overlap to some degree with the statutory claims decided in the state court action, this does not result in Counts II and III of Plaintiff's First Amended Complaint being barred by res judicata.  *See Tyson, Inc.*, 890 So. at 1210 ("Although the facts may overlap to a degree, this does not result in the breach of contract and fraud in the inducement claims in the second complaint being barred by res judicata."); *cf. McDonald v. Hillsborough Cty. Sch. Bd.*, 821 F.2d 1563, 1565 (11th Cir. 1987) ("If the testimony produced in the first action, in this case the state action[,] . . . is essentially the same as the testimony that would be required to try the second action, then it is proper to conclude that both actions are founded on the same cause of action.").

In sum, because all four identities are not present, res judicata does not bar the federal claims alleged in Count II and Count III of Plaintiff's First Amended Complaint.[2]  For the same reasons, res judicata does not bar the federal takings claim alleged in Count I of Plaintiff's First Amended Complaint.  Further, because res judicata does not apply, it is unnecessary to address whether Plaintiff properly reserved these federal claims pursuant to *Jennings v. Caddo Parish School Bd.*, 531 F.2d 1331 (5th Cir.), *cert. denied*, 429 U.S. 897 (1976).  *See, e.g.*, *Saboff v. St. John's River Water Mgmt. Dist.*, 200 F.3d 1356, 1360 (11th Cir. 2000) (recognizing that a *Jennings* reservation is "an exception to the well-settled doctrine of res judicata").

---

[2] Further, the rule against splitting of causes of action is inapplicable.  *See Tyson*, 890 So.2d at 1211 ("Because the rule against splitting causes of action is only an aspect of res judicata, it logically follows that if res judicata is not a bar to the bringing of a claim, impermissible splitting of causes of action is not either.").

### C.  Ripeness of Plaintiff's Takings Claim

The City further argues that the takings claim alleged in Count I of Plaintiff's First Amended Complaint is not ripe for consideration because Plaintiff failed to pursue an inverse condemnation proceeding in state court.  (Dkt. 26 at 14-20.)  In support, the City relies on *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 176 (1985).  In response, Plaintiff argues that he did not pursue an inverse condemnation proceeding in state court because doing so would have been futile.  (Dkt. 27 at 9-10.)

The Fifth Amendment prohibits the taking of property "without just compensation."  U.S. Const, amend. V.[3]  In *Williamson County*, however, the United States Supreme Court held that a property owner's takings claim is not ripe for consideration in federal court until the property owner has pursued any available state court remedies that might lead to just compensation.  473 U.S. at 194.  Thus, as the Eleventh Circuit has acknowledged, "*Williamson County* require[ed] potential federal court plaintiffs to pursue any available state court remedies that might lead to just compensation before bringing suit in federal court under section 1983 for claims arising under the Fourteenth and Fifth Amendments for the taking of property without just compensation."  *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1303 (11th Cir. 1992).  As the Court recognized, inverse condemnation is one type of proceeding available for pursuing just compensation in state court.  *Williamson County*, 473 U.S. at 196–97.

Here, Count I of Plaintiff's First Amended Complaint alleges that the City's regulatory actions amounted to a confiscatory taking of property contrary the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.  (Dkt. 23 ¶¶ 41-50.)  Plaintiff acknowledges that he never filed an inverse condemnation proceeding in a Florida state court seeking compensation for a

---

[3] "The Fifth Amendment's prohibition applies against the States through the Fourteenth Amendment." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 176 (1985).

regulatory taking.   (Dkt. 27 at 9.)   Consequently, if *Williamson County* remained valid law, Plaintiff's claim in Count I that the City has confiscated property without just compensation would not be ripe for adjudication because Plaintiff has not pursued compensation through an inverse condemnation proceeding.   473 U.S. at 195 (observing that "a property owner has not suffered a violation of the just compensation clause until the owner has unsuccessfully attempted to obtain just compensation"); *see also Anthony v. Franklin County*, 799 F.2d 681, 684 (11th Cir. 1986) (same).

While this case was pending, however, the Supreme Court decided *Knick v. Township of Scott, Pennsylvania*, No. 17-647, 2019 WL 2552486 (U.S. June 21, 2019).   In *Knick*, the Court expressly overruled *Williamson County* and eliminated the state-litigation requirement previously imposed on takings claimants in federal court.   *Id.* at *7, 11-13.   As the Court explained, "because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time."   *Id.*   The Court concluded that "a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time."   *Id.* at *11.

Based on *Knick*, Plaintiff was not required to bring an inverse condemnation claim in state court before asserting a Fifth Amendment takings claim under § 1983 in federal court.   The City's argument on this point is based squarely on *Williamson County* and is no longer viable.   Regardless of whether Plaintiff sought just compensation in state court through an inverse condemnation proceeding, Plaintiff's federal takings claim is ripe for consideration.   The City's Motion should therefore be denied as to Count I of Plaintiff's First Amended Complaint.

### D.  Failure to State a Claim as to Counts II and III

The City further argues that even if Counts II and III are not barred by res judicata, these counts should be dismissed because Plaintiff has failed to allege a facially plausible discriminatory act.  (Dkt. 26 at 20-24.)  Specifically, the City argues that Plaintiff's allegations in Counts II and III are conclusory and that Plaintiff has failed to allege facts that would support a reasonable inference that the City acted in a discriminatory manner when it approved Plaintiff's application for a conditional use permit.  (Dkt. 26 at 21.)  In response, Plaintiff argues that he has stated a facially sufficient due process takings claim in Count II because he has alleged that the City's actions were "intentionally spiteful."  (Dkt. 27 at 17.)

Here, Plaintiff alleges in Count II that (1) the City engaged in "intentionally spiteful" regulatory actions toward Plaintiff; (2) the City's regulatory actions "do not advance the State of Florida's interests in bona fide commercial agriculture"; (3) the City's regulatory actions were "irrational, arbitrary, and unlawful"; and (4) the City "acted either with the intent to deprive [Plaintiff] of his rights or in reckless disregard of his rights."  (Dkt. 23 ¶ 55.)  Plaintiff further alleges that the City treated him differently from his similarly situated neighbors.  (Dkt. 23 ¶¶ 52, 59.)  Plaintiff has not alleged that the City's regulatory actions violated procedural due process. To the extent that Plaintiff has attempted to assert substantive due process and equal protection takings claims, the Court addresses these claims in turn below.

#### 1.  Due Process Takings Claim (Count II)

Although the Eleventh Circuit has abandoned the distinction between just compensation claims and due process takings claims, it continues to recognize the availability of arbitrary and capricious due process claims in limited circumstances.  *See Kentner v. City of Sanibel*, 750 F.3d 1274, 1279–80 (11th Cir. 2014).  "The substantive component of the Due Process Clause protects

those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).  Fundamental rights are most, but not all, of the rights enumerated in the Bill of Rights, as well as certain unenumerated rights created by the U.S. Constitution.  *Id.* (citing *Planned Parenthood v. Casey*, 505 U.S. 833 (1992)).  However, property interests, such as those at issue in this case, are not established by the Constitution, but rather are created "by existing rules or understandings that stem from an independent source such as state law."  *Kentner*, 750 F.3d at 1279 (citing *Bd. of Regents of St. Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  "As a result, there is generally no substantive due process protection for state-created property rights."  *Id.* However, one exception to this general rule exists "where a person's state-created rights are infringed by a 'legislative act.'"  *Id.* at 1279–80 (citing *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005)).  In that situation, the substantive component of the Due Process Clause applies to protect the property owner from "arbitrary and irrational governmental action."  *Id.* (citing *Lewis*, 409 F.3d at 1273).

There is no definitive test for determining whether challenged actions are legislative or executive (that is, nonlegislative).  *Id.* (citing *Lewis*, 409 F.3d at 1273).  While some governmental officials perform duties that are patently legislative or executive in nature, "others, like county commissioners[,] . . . act in both a legislative and executive capacity," making it more difficult to "sort[ ] out which hat they were wearing when they made a decision."  *Lewis*, 409 F.3d at 1273. Nevertheless, the Eleventh Circuit has set forth the following guideposts for this determination:

> Executive acts typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one.  *McKinney*, 20 F.3d at 1557 n. 9 (citations omitted).  This includes employment terminations or individual acts of zoning enforcement.  *Id.*; *see also Crymes v. DeKalb Cnty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991).

> "Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society." *McKinney*, 20 F.3d at 1557 n. 9. "[L]aws and broad-ranging executive regulations are the most common examples." *Id.* A legislative act also involves policy-making rather than mere administrative application of existing policies. *DeKalb Stone, Inc.*, 106 F.3d at 959. Prospective "zoning-type decisions made by an elected body" are often legislative or quasi-legislative. *75 Acres, LLC v. Miami–Dade Cnty.*, Fla., 338 F.3d 1288, 1296 n. 12 (11th Cir. 2003) (citation omitted).

*Kentner*, 750 F.3d at 1280.

In this case, Count II of the First Amended Complaint alleges that the City, through the LDR and the Conditional Use Permit, intentionally treated Plaintiff's commercial farming operation differently than other similarly situated farms. (Dkt. 23 ¶ 52.) Plaintiff further alleges that the City's conduct in granting the Conditional Use Permit was "irrational, arbitrary, and unlawful." (Dkt. 23 ¶ 55.) Plaintiff cannot sustain a due process claim based on the City's allegedly arbitrary and capricious action in granting Plaintiff's request for a conditional use permit. The City's approval of Plaintiff's conditional use application constituted an executive action, as it applied only to Plaintiff and his property, rather than to the residents of Haines City at large. (Dkt. 26-2 at 32-35); *see also Lewis*, 409 F.3d at 1274 ("[E]nforcement of existing zoning regulations is an executive, not legislative[,] act."). Plaintiff's property rights exist pursuant to Florida state law, *see, e.g.*, Art. I, § 2, Fla. Const. (providing that all natural persons have "inalienable rights, among which are the right . . . to acquire, possess and protect property"). Plaintiff cannot establish a due process claim based on executive actions affecting his state-created property rights. *See, e.g.*, *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1263 (11th Cir. 2003) ("[N]on-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrary and irrationally.").

However, to the extent that Plaintiff argues that the LDR itself is arbitrary and capricious on its face, Plaintiff challenges a legislative act. *See, e.g.*, *Kentner*, 750 F.3d at 1280. This is because the City's Land Development Regulations apply to the general public in Haines City, not just to Plaintiff, and the Land Development Regulations are a policymaking function of the City Commission. *See* Haines City, Fla., Land Dev. Reg., Chapter 2 (Purpose), *available at* https://library.municode.com/fl/haines_city/codes/land_development_regulations_?nodeId=CH2PU. Accordingly, to the extent Plaintiff asserts that the LDR is arbitrary and capricious, such a claim falls within an exception to the general rule prohibiting due process claims premised on state-created interests, and the Court must, therefore, proceed beyond the "fundamental rights" inquiry.

"Substantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." *Kentner*, 750 F.3d at 1280 (citing *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013)). To survive rational-basis scrutiny, "the challenged provision need only be rationally related to a legitimate government purpose." *Foley v. Orange County*, 638 Fed. App'x. 941, 944 (11th Cir. 2016) (quoting *Schwarz v. Kogan*, 132 F.3d 1387, 1390 (11th Cir. 1998)). A governmental entity is "not required to convince the courts of the correctness of their legislative judgments"; rather, the party challenging the entity's legislative judgment bears the burden of proving that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Kentner*, 750 F.3d at 1281 (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)). As the Eleventh Circuit has recognized, the rational-basis standard is "highly deferential," such that legislative acts reviewed under this standard are found to be

unconstitutional "in only the most exceptional of circumstances." *Id.* (citing *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001)).

Even accepting Plaintiff's factual allegations in this case as true, Plaintiff does not plausibly allege that the Land Development Regulations of Haines City lack any rational basis. Plaintiff's First Amended Complaint asserts legal conclusions regarding the allegedly arbitrary nature of the zoning regulations, without offering any factual explanation to support these contentions.   Plaintiff alleges that the provisions of the LDR are "intentionally spiteful to [Plaintiff]," "irrational, arbitrary, and unlawful," and that the City has acted with the intent to "deprive [Plaintiff] of his rights." (Dkt. 23 ¶ 55.) These allegations, without more, are conclusory and lack any plausible foundation.  In addition, although Plaintiff argues that the LDR violates Florida law, the Florida state courts have already rejected Plaintiff's claims that the LDR and the Conditional Use Permit violate the Florida Statutes.  (Dkt. 26-4; Dkt. 26-6.)  Thus, Plaintiff's allegations fail to suggest that the actual substance of the LDR—namely, its impact on property owners in Haines City—is arbitrary or capricious.

Because Plaintiff's arbitrary and capricious due process claim is either foreclosed by binding precedent or lacks any plausible foundation, it is subject to dismissal.  Plaintiff has not otherwise alleged a viable due process takings claim.  The undersigned therefore recommends that the City's Motion to Dismiss be granted as to this portion of Count II and this portion of Count II of Plaintiff's First Amended Complaint should be dismissed without prejudice.

### 2.  Equal Protection Claim (Count II)

"The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner."  *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002). "When legislation classifies persons in such a way that they receive different treatment under the

law, the degree of scrutiny the court applies depends upon the basis for the classification." *Id.* "If a fundamental right or a suspect class is involved, the court reviews the classification under strict scrutiny." *Id.* However, "[i]f an ordinance does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the ordinance must be rationally related to the achievement of a legitimate government purpose." *Id.* (quoting *Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000)).

Accordingly, a property owner pursuing an equal protection claim as a "class of one" must show that "[he] has been intentionally treated different from others similarly situated and that there is no rational basis for the difference in treatment." *Foley*, 638 Fed. App'x at 944 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). "To be similarly situated, the comparators must be prima facie identical in all relevant respects." *Id.* (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010)). The inquiry is then the same as that pertaining to substantive due process challenges to a zoning ordinance: the ordinance must be "rationally related to the achievement of some legitimate government purpose." *Bannum, Inc. v. City of Fort Lauderdale*, 157 F.3d 819, 822 (11th Cir. 1998).

Here, the First Amended Complaint falls short of stating a viable equal protection claim. Essentially, Plaintiff alleges that although the City granted his application for a conditional use permit, the City granted more favorable conditional use permits to Plaintiff's neighbors. (Dkt. 23 ¶¶ 26, 52, 59.) However, the closest Plaintiff comes to identifying a comparator is his claim that his neighbor to the east was granted the right to keep an "unlimited number of animals and of any species on his 40-acre farm." (Dkt. 23 ¶ 59.) The comparator farm Plaintiff identifies is twice the size of Plaintiff's 20-acre farm. (Dkt. 23 ¶¶ 5, 59.) Thus, Paragraph 59 does not identify similarly situated properties. Plaintiff's reference to "other similarly situated farms" in Paragraph 52 is too

vague and conclusory to satisfy the pleading standard set forth in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). *See Iqbal*, 556 U.S. at 679 (instructing courts that they need not presume as true those allegations that "are no more than conclusions"); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (rejecting "conclusory allegation that" plaintiff "is similarly situated" to its competitor "in all relevant ways").

Moreover, Plaintiff has not alleged that the Conditional Use Permit grants Plaintiff anything less than what he requested in his application. A comparison of Plaintiff's application with the Conditional Use Permit indicates that the City granted Plaintiff's exact request from the application, and Plaintiff has not alleged otherwise. (Dkt. 26-2 at 31-35.) Plaintiff is therefore unable to plausibly allege that he was discriminated against or treated differently from a similarly situated comparator when the City fully granted Plaintiff's request for a conditional use permit. *Cf. Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (holding plaintiff stated sufficient equal protection claim where the defendant "intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners").

Lastly, Plaintiff has not sufficiently alleged that the City's regulatory actions were not rationally related to a legitimate governmental purpose. Notably absent from the allegations in the First Amended Complaint are any facts concerning the City's intent to discriminate against Plaintiff. Similarly, the Court finds the references to the "intentionally spiteful" basis for the City's grant of the Conditional Use Permit too conclusory to support a claim that the City's enforcement decisions have been arbitrary and irrational. *Iqbal*, 556 U.S. at 679 (instructing courts that they need not presume as true those allegations that "are no more than conclusions"). The allegations of Plaintiff's First Amended Complaint fall short of the very minimal pleading requirements

applied in *Executive 100, Inc.*, 922 F.2d at 1541–43.  Accordingly, the First Amended Complaint does not sufficiently allege that the City's acts of enforcing the LDR and granting the Conditional Use Permit resulted in any violation of the Plaintiff's right to equal protection.

In sum, Plaintiff fails to set forth any facts to plausibly support an equal protection claim. The City's Motion as to this claim should granted and this portion of Count II of Plaintiff's First Amended Complaint should be dismissed without prejudice.

### 3.  Fair Housing Act Claim (Count III)

The City further argues that Plaintiff has failed to allege a facially plausible claim in Count III that the City violated the Fair Housing Act.  (Dkt. 26 at 21.)  Plaintiff has not specifically responded to this argument but separately argues that he has alleged a continuing violation of the FHA.  (Dkt. 27 at 18-20.)

The FHA prohibits the "refus[al] to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin." 42 U.S.C. § 3604(a).  As the Eleventh Circuit explained in *Bonasera v. City of Norcross*, 342 F. App'x 581, 583 (11th Cir. 2009), "to prevail on a claim under the FHA, a plaintiff must demonstrate 'unequal treatment on the basis of race that affects the availability of housing.'" (quoting *Jackson v. Okaloosa County Fla.*, 21 F.3d 1531, 1542 (11th Cir. 1994)).  A plaintiff can establish a violation under the FHA by proving (1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation.  *Id.*  The operative provisions of the FHA, 42 U.S.C. § 3604–(a)(c), have been "routinely interpreted to prohibit the enforcement of zoning ordinances, like the one at bar, in a manner that denies a protected class equal access to housing." *Estvanko v. City of Perry*, No. 5:09-CV-137 CAR, 2011 WL 1750232, at *3 (M.D. Ga. May 6, 2011).

- 21 -

In this case, Plaintiff has not presented a facially plausible claim that the City's actions in adopting the LDR and approving Plaintiff's application for a conditional use permit constitute intentional discrimination, resulted in a discriminatory impact, or represent a refusal to make a reasonable accommodation.  The LDR is facially race neutral and does not on its face discriminate against any protected class.  Plaintiff has not alleged that the City harbored a discriminatory intent in adopting the LDR.  *Cf. Jackson v. City of Auburn*, 41 F. Supp. 2d 1300, 1311 (M.D. Ala. 1999) ("If . . . a zoning board's response to political pressure amounts to implementation of local residents' discriminatory impulses, then the board's actions may give rise to a cause of action for intentional discrimination."); *see also Palm Partners, LLC v. City of Oakland Park*, 102 F. Supp. 3d 1334, 1343–44 (S.D. Fla. 2015) ("A plaintiff may demonstrate intentional discrimination if the 'decision-making body acted for the sole purpose of effectuating the desires of private citizens, that [discriminatory] considerations were a motivating factor behind those desires, and that members of the decision-making body were aware of the motivations of the private citizens.'" (quoting *Hallmark Developers, Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1283–84 (11th Cir. 2006))).

In addition, the Conditional Use Permit grants Plaintiff the agricultural and farming exceptions from the LDR that he requested and only includes those limitations that Plaintiff himself included within his application.  *Cf. Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2015 WL 10489151, at *1 (M.D. Fla. July 22, 2015) ("Plaintiff alleges sufficient facts demonstrating that unlawful discrimination motivated the City of Tampa's decision to *deny* the special use permit.") (emphasis added).  Lastly, Plaintiff has not made any allegation that the City's action in granting the Conditional Use Permit was not authorized by and consistent with the LDR.  (*See* Dkt. 23-1 at 7-8.)

In sum, none of the actions Plaintiff identifies could be reasonably interpreted as discriminatory in nature or impact.  While Plaintiff characterizes the City's actions as intentional, spiteful, and discriminatory (Dk. 23 ¶¶ 55, 66), his allegations are conclusory and lack any factual basis.  Accordingly, the City's Motion as to this claim should granted.  Count III of Plaintiff's First Amended Complaint should be dismissed in its entirety.

**E.  Timeliness of Plaintiff's FHA Claim**

The City argues in the alternative that the FHA claim alleged in Count III of Plaintiff's First Amended Complaint should be dismissed as time barred. (Dkt. 26 at 24.)  In response, Plaintiff argues that the City's actions represent a "continuing violation" of the FHA and that the limitation period therefore has not run.  (Dkt. 27 at 18-20.)

"The FHA prohibits discrimination in housing on the basis of race, color, religion, sex, national origin, familial status, and disability." *Allen v. Hous. Auth. of City of Auburn, Ala.*, 638 F. App'x 825, 830 (11th Cir. 2015) (citing 42 U.S.C. § 3601, *et seq.*).  For purposes of the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or termination of an alleged discriminatory . . . housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).  Thus, the FHA provides for a two-year statute of limitations in which a plaintiff must commence her action.

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982), the Supreme Court concluded that "a 'continuing violation' of the Fair Housing Act should be treated differently from one discrete act of discrimination."  The continuing violation doctrine is based on "the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Hipp v. Liberty*

*Nat. Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001) (quotation omitted). "Congress has since codified this continuing violation doctrine by amending the FHA to include both "the occurrence [and] *the termination* of an alleged discriminatory housing practice" as events triggering the two-year statute of limitations." *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008) (emphasis in original) (quoting 42 U.S.C. § 3613(a)(1)(A)).

In this case, the FHA claim alleged in Count III of Plaintiff's First Amended Complaint is solely predicated on the City's actions in adopting the LDR and approving the Conditional Permit. (Dkt. 23 ¶ 64, 66, 70.)  The conduct Plaintiff identifies occurred, at the latest, on August 6, 2015, when the City Commission approved the Conditional Use Permit.  (Dkt. 23 ¶ 26; Dkt. 23-1 at 11-14.)   Thus, the limitations period for Plaintiff's FHA claim expired on August 6, 2017, approximately 11 months before Plaintiff filed this action.  (Dkt. 1.)  Plaintiff's claim, as pled, is therefore time-barred.  *See Davenport v. Litton Loan Servicing*, LP, 725 F. Supp. 2d 862, 875 (N.D. Cal. 2010) (dismissing FHA claim as untimely where the plaintiff had not alleged any unlawful conduct after the origination and culmination of her loan, which occurred more than two years prior to her filing her complaint); *Phan v. Accredited Home Lenders Holding Co.*, No. 09–CV–328, 2010 WL 1268013, at *3 (M.D. Fla. Mar. 29, 2010) (dismissing FHA claim as time-barred because it was based on alleged "discrimination [that] occurred at or before loan origination," two-and-a-half years before the complaint was filed); *Goodwin v. Exec. Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1251 (D. Nev. 2010) (dismissing FHA claim where "[t]he conduct giving rise to [the] claim [was] the issuance of a 'less-than-favorable loan,'" and the statute of limitations began running on the date the plaintiff executed the deed of trust, more than two years before she initiated the action); *Pantoja v. Scott*, No. 96–CV–8593, 2001 WL 1313358, at *9 (S.D.N.Y. Oct. 26, 2001) (where the plaintiff's FHA claim alleged a discriminatory failure to

provide secondary financing, the plaintiff had until two years after the date of closing to initiate his suit).

In addition, the continuing violation doctrine is inapplicable.  Under the continuing violation doctrine, a plaintiff may "sue on otherwise time-barred claims as long as one act of discrimination has occurred . . . during the statutory period."  *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1284 (11th Cir. 2015), *vacated on other grounds*, *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 197 L. Ed. 2d 678 (2017).  "'[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an *unlawful practice* that continues into the limitations period, the complaint is timely when it is filed within [the limitations period, starting at] the last asserted occurrence of that practice.'"  *Id.* (quoting *Havens Realty Corp.*, 455 U.S. at 380–381) (emphasis added).

Here, the First Amended Complaint alleges that, "[s]ince August 5, 2015, through the time of filing this complaint, [Plaintiff] has been and continues to be subjected to the alleged discriminatory misconduct by the City through the enforcement of the provisions of its Resolution 15-1153, which expires ten (10) years from August 05, 2015."  (Dkt. 23 ¶ 17.)  However, this statement, taken together with Plaintiff's other allegations, is insufficient to plead a continuing violation.  Plaintiff has not alleged any *act* taken against him by the City after August 6, 2017, that could state a claim under the FHA.  Instead, Plaintiff refers to the continuing impact of the LDR and the Conditional Use Permit, including the requirement that Plaintiff must reapply for a new conditional use permit after ten (10) years.  The continuing consequences of the City's actions are not sufficient to justify applying the continuing violation doctrine. *See, e.g.*, *Porter v. Ray*, 461 F.3d 1315, 1323 (11th Cir. 2006) (observing that "the critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one-time violation,

which does not extend the limitations period, or the continuation of that violation into the present, which does").

Thus, as currently pled, the First Amended Complaint fails to allege a continuing violation of the FHA.  Plaintiff's FHA claim is therefore untimely and should be dismissed.  For Plaintiff to avoid a second dismissal, he must plead a facially sufficient and timely FHA claim by alleging actions taken against him by the City on or after August 6, 2017, that would represent a violation of the FHA.

## CONCLUSION

For the foregoing reasons, it is recommended that the City's Motion to Dismiss be granted as Counts II and III of Plaintiff's First Amended Complaint and that these counts be dismissed without prejudice.  Accordingly, it is **RECOMMENDED**:

1.      Defendant's Dispositive Motion to Dismiss (Dkt. 26) be **GRANTED in part and DENIED in part**.

2.      Defendant's Dispositive Motion to Dismiss be **GRANTED** as to Counts II and III of Plaintiff's First Amended Complaint and that those counts be **DISMISSED** without prejudice;

3.      Defendant's Dispositive Motion to Dismiss be **DENIED** as to Count I of Plaintiff's First Amended Complaint;

4.      Plaintiff be granted leave to file an amended complaint as to Counts II and III within thirty (30) days of any order adopting this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on July 9, 2019.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.


Copies furnished to:
Counsel of Record
Unrepresented Party