# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BENEDICT MOHIT,

     Plaintiff,

v.                            Case No: 8:18-cv-1775-T-17JSS

CITY OF HAINES CITY, a political
Subdivision of the State of Florida,

     Defendant.

_____/

## **SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

The Plaintiff files suit against the Defendant for denying him, by ordinance, regulation, resolution, rule, and policy, of his vested statutory right to use his property for the conduct of bona fide commercial crop and animal production activities and farming operations, where (1) his property is an existing farm firm classified as agricultural lands pursuant to §193.461, Fla. Stat., and where (2) he has and he always intended to conduct all agricultural purposes, farm uses and farm operations on his farm firm by implementing best management practices and regulations which are adopted as Rules under Chapter 120, Florida Administrative Code, and by implementing rules and codes adopted by agencies of the Federal Government of the United States of America, thereby, violating his civil rights.

## **PARTIES**

1.  The Plaintiff is Benedict Mohit ("the Farmer"), appearing *pro se,* and his property, a farm firm, is located in the R-2 zoned residential district of the City of Haines City.

2. The Defendant is the City of Haines City ("the City"), a Political Subdivision of the State of Florida, located in Haines City, Polk County, Florida.

## JURISDICTION

3. The federal statutes and/or provisions of the United States Constitution that are at issue in this case are (i) Fifth Amendment, 42 U.S.C. §1983, (ii) Fourteenth Amendment, and (iii) Federal Fair Housing Act, 42 U.S.C. §§ 3601-3619, Title VIII of the Civil Rights Act.

## GENERAL ALLEGATIONS AND STATEMENT OF FACTS

4. In May 2012, the Farmer purchased a 20-acre abandoned farm annexed from Polk County and now located in the R-2 zoned residential district of the City of Haines City, and he immediately began bona fide commercial pasture and growing of hay by implementing its state-regulated Rule 5M-6, spending $6,000.00 to establish the crop.

5. On January 01, 2013, as a direct result of the existing farm uses, Polk Count Property Appraiser classified the Plaintiff's farm ("the Farm") as agricultural lands pursuant to §193.461, Fla. Stat., (*Florida Greenbelt Law*). Exhibit 1, ¶3

6. Like all farmers in Florida, the Farmer has a vested statutory right to conduct state-regulated farm operations on his *Greenbelt* Farm in a manner that cannot be regulated by the City; that right was denied by the City through regulations and policy which make the conduct of such farm operations unlawful; and the City has not created an exception or exemption for the conduct of such state-regulated farm operations on lands classified as agricultural pursuant to §193.461, Fla. Stat.

7. The City's regulation of the Farmer's state-regulated agricultural purposes on his *Greenbelt* Farm is a "duplication of state regulation," a *conflict-preemption* with the "Limitation on Duplication of Government Regulation" clauses of §§823.14, and163.3162, Fla. Stat.

2

8. Section 193.461, Fla. Stat., states that: "(3b) The term 'bona fide agricultural purposes' means good faith commercial agricultural use of the land, and (5) The term 'agricultural purposes' includes, but is not limited to, horticulture; floriculture; viticulture; forestry; dairy; livestock; poultry; bee; pisciculture; fish; aquaculture; algaculture; sod farming; and all forms of farm products as defined in s.823.14 (3) and farm production."

9. The Farmer is and has always been desirous of conducting on his *Greenbelt* Farm good faith commercial agricultural purposes and operations, including hay, livestock, apiculture (*bee*), and poultry, via the implementation of their respective best management practices (BMPs) adopted as Rules under Ch. 120, Florida Administrative Code (FAC), and via the implementation of rules and codes adopted by agencies of the U.S. Federal Government; he wanted to **change** his farm product from hay to beef; and he always wanted to erect barb wire fences on his Farm.

10. Prior to August 2015, the City, by regulation and policy, made it <u>unlawful</u> for the Farmer to conduct any state-regulated bona fide commercial farm operations on his *Greenbelt* Farm, including his existing hay crop and his proposed apiculture, poultry and livestock operations.

11. Agricultural purposes and activities regulated by BMPs developed by Florida Department of Agriculture and adopted as Rules under Ch. 120, FAC, include, Apiculture (*bees*) by Rule 5B-54.0105; Florida Poultry (*chicken, ducks, turkeys, pheasants*) by Rule 5M-19; Florida Citrus (*oranges, grapefruit, limes, lemons, tangerines*) by Rule 5M-16 and Rule 5M-5; Florida Container Nursery (*horticulture, shrubs, flowers, ornamental plants)* by Rule 5M-6; Florida Vegetable and Agronomic Crops (*hay, pasture, sugar cane, wheat, corn, cotton, tobacco, tomatoes, zucchini*) by Rule 5M-8; Florida Sod (*Bahia, Bermuda, Tifton, Zoysia, St. Augustine*) by Rule 5M-9; Florida Cattle Operations (*livestock, sheep, goat, cow, bison*), by Rule 5M-11;

3

Florida Specialty Fruit and Nut Crops (*papaya, avocado, grapes, peach, pecan*) by Rule 5M-13; Florida Equine Operations (*horses, mules, burros*) by Rule 5M-14; Florida Dairies (*cows, goats*) by Rule 5M-17; Aquaculture (*fish*) by Rule 5L-3.004; and Florida Silviculture (*forestry, pine, conifers, hard woods*) by Rule 5I-6. Exhibit 2

12. The USEPA regulates and permits the conduct of feed lot operations and farm uses, including poultry through EPA 833-F-02-008, Exhibit 3; and the U.S. Department of Agriculture (USDA) regulates farm operations, including the conduct of livestock grazing through the NRCS Practice Code 528, Exhibit 3a.

13. Exhibit 4, the Florida trial court transcript, Trial Court Dkt. 62, states as follows:

    a. COURT: The statutes (*§163.3162 and §823.14*) mirror each other as to the <u>exception</u>. But the exception -- and I'm just paraphrasing it – is they may not regulate if the activities are the subject of adopted best management practices or otherwise regulated by Florida Department of Agriculture…Page 9, ¶3

    b. COURT: The City may not regulate agricultural uses if the activities are the subject of adopted best management practices; -- and the legislature was making a point that if agricultural activities are regulated by the state then the city and the county doesn't have anything to do with that -- <u>Can't regulate it</u>. But the necessary implication there, just on the face of the statute, is if they're not, they can. Page 10

    c. COURT: So you concede you are subject to the statutes. The regulations are subject to the statutes? CITY ATTORNEY: Yes, sir. Page 12, ¶5

    d. COURT: What the statute says is the City may not regulate if this condition prevails. This condition being the exception in the statute, right? That's what the statute says on its face. But <u>there is no allegation in the complaint that what agricultural activity that you are proposing is addressed by a best management practice, as you say</u> – adopted by the Department of Agriculture… After all, the goal here is to avoid a duplication of regulation. Page 16, ¶1, 2

    e. COURT: Well, Mr. Reilly, (*City Attorney*), what safeguards, if any, are in the City's ordinances which will accommodate 604.50 and 163.3162 in the sense that if someone applies for something that is otherwise the subject of a best management practice or regulated by the state, you look at that application and say -- **what they want to do, we don't have any business regulating**? Do you understand my question? MR. REILLY: To be candid with the court, I'm not 100 percent sure the

staff was up to date on the status of some of the statutes and what they meant. And -- you know, I will admit that. COURT: I'm pretty much 100 percent sure they weren't. Page 27, ¶2, 3, 4; Page 28, ¶ 1

f.   COURT: He does refer to Chapter 120 in the statute. Now, has that -- <u>have those exceptions been folded into your regulations</u>? MR. REILLY: To be candid with the court, I think there are certainly some places in our code that need to be revised. Page 28, ¶8, 9; Page 29, ¶1

g.   COURT: Mr. Reilly what is the effect of having it (*Resolution 15-1153*) for 10 years -- What is the goal -- or the aim you are seeking? MR. REILLY: The idea was to have some basis for it to come back before the City. COURT: Come back to the City towards what end? <u>Towards prohibiting an activity that's contemplated under the statutes</u>? -- But under the statutes, if it's appropriately located now, -- there could be condominium high-rises around it tomorrow, and that's not going to affect its ability to be – to remain there under the current statutory scheme. The uses surrounding it, whether they change or not, is going to be irrelevant to that determination. Do you understand what I am saying?" MR. REILLY: Yes, sir. Page 30, ¶7, 9, 11; Page 32, ¶1, 2, 7

h.   Court Ruling: COURT: August 6, 2015, the date the Conditional Use Permit was adopted, is a seminal date. What happened before was quite a bit different than after, and what was permitted before that date was different after. I am going to grant a motion to dismiss without prejudice to you refilling the complaint. And the City, depending on what you allege, may be <u>susceptible to a damages claim</u> in connection with what occurred before August 06, 2015. Exhibit 4a

14. By order dated November 30, 2015, the Florida trial court finds that, "Pursuant to Section 823.14 (*Florida Right to Farm Act*) and Section 163.3162, Florida Statutes, local governments do have the right to regulate agricultural activities, but <u>local governments may not adopt any ordinance, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural where such activity is regulated through implemented best management practices</u> developed by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, and adopted under Chapter 120 as part of a statewide or regional program." *Mohit v. City of Haines City,* Case No. 2014-CA-004014. ("*Mohit I*") Exhibit 1, ¶4

15. In the state court complaint, the *pro se* Farmer did not express that his existing hay crop was and that his proposed livestock operations would be conducted via the implementation of state-adopted-BMP-rules and so, the state court proceeded to adjudicate based on the premise that the Farmer's proposed operations were not being implemented via state-regulated BMPs.

16. Since May 2012 to today, the City prohibited apiculture on the Plaintiff's Farm although §586.10, Fla. Stat., Preemption of local government ordinances - states in part that, "The authority to regulate and permit honeybee colonies is **preempted** to the state and supersedes any related ordinance adopted by a county, municipality, or political subdivision thereof," and §586.055, Fla. Stat., Location of apiaries - states that, "An apiary may be located on land classified as agricultural under s. 193.461."

17. Today the City, by regulation and resolution, prohibits the Plaintiff from keeping six (6) horses on his *Greenbelt* Farm even though he will implement equine operations via Rule 5M-14, FAC.

18. In *Wilson v. Palm Beach County*, 62 So. 3d 1247 (Fla. Dist. Ct. App. 2011), the Court finds that, "[T]he Right to Farm Act provisions restricting local government from adopting ordinances restricting farming activities became effective on June 16, 2000."

19. The Farm firm has been in operation since May 2012, more than one year after the Plaintiff filed suit in state court, and it was not a nuisance at the time of its established date of operation nor at any time thereafter; and all existing and proposed farm operations conform to generally accepted agricultural and management practices.

20. Pursuant to §163.3194 (5), §163.3162 (3), and §823.14 (4b), (6), Fla. Stat., the State of Florida **pre-empts** the regulation of the conduct of good faith commercial agricultural purposes on property which is classified as agricultural lands pursuant to §193.461, Fla. Stat., when such farm purposes are implemented via their state-adopted rules or via federal rules and codes.

21. In *J-II Investments, Inc. v. Leon County*, 908 So.2d 1140 (Fla. Dist. Ct. App. 2005), the Court states that, "A statute must be given its plain and obvious meaning. *McLaughlin v. State,* 721 So.2d 1170, 1172 (Fla.1998)," and that, "The plain, **unambiguous** terms of section 163.3162(4), Florida Statutes, prevent counties from adopting ordinances relating to agriculture."

22. The City derives its authority to adopt land *development* regulations via (1) §163, Fla. Stat., Part II, Land Development Regulation; (2) §166, Fla. Stat., the "Municipal Home Rule Powers Act"; and (3) the City derives 'home rule' powers via Article VIII, section 2(b), Florida Constitution.

23. On July 05, 2012, the City adopted its current land development regulations (LDR), Ordinance No. 12-1424, in which Sec. 5-2 makes it unlawful to keep any animal within the City, and Sec. 5.6.3. (B) specifies the permitted uses in the R-2 district as: single family dwellings, public recreational facilities, schools and colleges, houses of worship, and cemeteries; Sec. 5.6.3. (D4) prohibits any use not specifically included in Sec. 5.6.3. (B); and Ordinance No. 12-1424 does not expressly grant an exception or exemption for the conduct of any bona fide commercial agricultural purposes in the R-2 district even when such agricultural purposes are implemented via state-adopted BMP rules or via federal rules and codes. Exhibit 5.

24. Sections 163.3221(4b5), 163.3164 (14), and 380.04 (3e), Fla. Stat., states that, "the definition of '*development*' as it pertains to the development of land, a development order, and a development permit, **excludes** 'the use of any land for the purpose of growing plants, crops, trees, and other agricultural or forestry products; raising livestock; or for other agricultural purposes.'"

25. In *Schultz v. Love PGI Partners, 731 So. 2d 1270 (Fla. 1999),* the Supreme Court of Florida approved the Fifth District's conclusions in *Love PGI Partners v. Schultz* 706 So.2d 887 (Fla. 5th DCA 1998), where the Fifth District - (1) **disagreed** with the trial court conclusion that, "In order to conduct cattle grazing activities on this parcel, Sugarmill would have to have that activity <u>properly exempted and permitted by the County, which it had not done</u>" (2) finds that municipal codes adopted pursuant to chapter 163 deal with regulations for the *development* of land and these codes provide for regulation of activities which constitute "development" (3) finds that forestry and cattle raising activities are excluded from the regulation of development pursuant to the statute (§163.3164(14) - §380.04, Fla. Sta.); and the Supreme Court of Florida **disapproved** *Robbins v. Yusem,* 559 So.2d 1185 (Fla. 3d DCA 1990), where Yusem's property was zoned  industrial district (IU-C) under the County Zoning Code, and the property was actually used for the commercial farming of yucca and Calabaza – the Appeal Court *incorrectly* ruled that such use of the property was <u>unlawful</u> under the County Zoning Code.

26. Section 163.3194(b), Fla. Stat., states that, "All land development regulations enacted shall be consistent with the adopted comprehensive plan;" §163.3194(4a), Fla. Stat., states that, "The court may consider the relationship of the comprehensive plan or elements thereof, to the governmental action taken or the development regulation involved in litigation, <u>but private property shall not be taken without due process of law and the payment of just compensation;</u>" §163.3194(5), Fla. Stat., states that, "The tax-exempt status of lands classified as agricultural under s. 193.461 <u>shall not be affected by any comprehensive plan</u> adopted under this act as long as the land meets the criteria set forth in s. 193.461;" and §163.3213(2b), Fla. Stat., states that, "'Land development regulation' means an ordinance enacted by a local governing body

for the regulation of any aspect of <u>development</u> or any other regulation concerning the <u>development</u> of land."

27. In *Schultz v. Love PGI Partners,* 731 So. 2d 1270 (Fla. 1999), Justice J. Anstead in his dissenting opinion stated that, "Today, the use of land is largely controlled by local zoning laws, under a land use planning scheme *mandated* by the state to be developed and enforced by local government. Obviously, that comprehensive scheme can hardly work if landowners (*farmers*) are free to ignore zoning laws in their use of land. However, that is precisely the import of our ruling today."

28. In *City of Palm Bay v. Wells Fargo Bank*, N.A., No. SC11-830 (Fla. May 16, 2013), the Supreme Court of Florida affirms that, "The critical phrase of article VIII, section 2(b) - "except as otherwise provided by law" - establishes the constitutional superiority of the Legislature's power over municipal power. Accordingly, "[m]unicipal ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute." When a municipal "ordinance flies in the face of state law" - that is, cannot be reconciled with state law - the ordinance "cannot be sustained." Such "conflict preemption" comes into play "where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute. We have also recognized that where concurrent state and municipal regulation is permitted because the state has not preemptively occupied a regulatory field, "a municipality's concurrent legislation must not conflict with state law.""

29. From May 2012, to July 05, 2012, the City, by land *<u>development</u>* regulations, did not permit the conduct of any bona fide commercial state-regulated-BMP-rule agricultural purposes or farm production activities on the Plaintiff's Farm.

30. From January 01, 2013, to August 06, 2015, the City, by policy and by LDR, Sec. 5-2, 11-40, 5.6.3. (B), and 5.6.3. (D4), underlined_adopted on July 05, 2012, did not permit a change of the farm product or the conduct of any bona fide commercial state-regulated-BMP-rule agricultural purposes or farm production activities on the Plaintiff's *Greenbelt* Farm.

31. From January 2013 to August 2015, the City, via Ordinance 12-1424, Sec. 5.2, 11-40, 5.6.3. (B), and 5.6.3 (D4), denied the Plaintiff Farmer of all economically beneficial and productive use of his property, denied him of the vested statutory right to use his property for the conduct of bona fide state-regulated agricultural purposes and farm production activities, and deprived him of all potential farm income, thereby, rendering his *Greenbelt* Farm worthless.

32. From February 2014 to June 2014, the Farmer did not conduct any farming activities on his Farm, and since May 2012 to today, he has not earned any revenues from his *Greenbelt* Farm.

33. On July 01, 2014, the Farmer met with City officials regarding changing his existing hay crop and his proposed state-regulated livestock operations; City officials threatened him with fines, a lien on his property, and to shut his Farm down if he continued his agricultural activities or if he was to keep any animals on his Farm without a conditional use development permit; the Officials stated that agriculture was not a permitted use in the R-2 residential zoned district, and that the conduct of any agricultural purpose by the Farmer would be unlawful.

34. At the July 2014 meeting, City Officials insisted that the Farmer must apply for a development permit which he did under protest, bringing to the City's attention the Polk County Property Appraiser's report, including its cited case law on agricultural classification, and he wrote at the top of the application that the permit requirement for his proposed farm activities is in violation of state law; the Officials stated that the City has a "charter ordinance" and therefore does not have to comply with the statutes or the case law cited by the Property Appraiser, and

that the City can adopt and enforce "stricter" provisions for farm operations than state law; the Officials told the Farmer that he must list the type and number of animals on his application, keeping the numbers low, for a farmer like him to have any chance of an approval, and that he can keep only one type of animal at a time but he may rotate them, and he must state that he will not keep any pigs; the Officials stated that his farm fence require a permit and its fee, and his farm fence would have to meet the residential fence setback like Groullon's farm.

35. In October 2014, the Farmer filed suit against the City in state court for adopting regulations which prohibit his conduct of agricultural activities and as a result, on May 26, 2015, the state trial court ordered him to submit a new application to the City for a conditional use permit to pursue livestock grazing on his Farm which he did under protest in court. Exhibit 6, ¶1

36. On August 06, 2015, the City adopted *Resolution* No. 15-1153, a conditional use *development* permit for the Farmer to conduct specific agricultural activities on his Farm with provisions stipulating: (a) a maximum of twenty cattle or five horses; (b) the express prohibition of animal feed lot operations and swine (*pigs*) production; and (c) limiting all bona fide commercial agricultural purposes, including forestry, to ten years. Exhibit 7

37. Sec. 5.6.3. (E) of the City's LDR requires a "conditional use development permit" for the conduct of four specific agricultural purposes namely: (a) citrus, (b) horticulture, (c) forestry, and (d) grazing, pasture and growing hay; but these four farm operations are each regulated by a Rule adopted under Ch. 120, FAC, namely: (a) citrus by Rule 5M-16, (b) horticulture by Rule 5M-6, (c) forestry by Rule 5I-6, and (d) livestock grazing by Rule 5M-11; hay by 5M-8.

38. Section 163.3162(3), Fla. Stat., states in part that, "A governmental entity may not exercise any of its powers to adopt or enforce any ordinance, regulation, *resolution* , rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land

classified as agricultural land pursuant to s.193.461, if such an activity is regulated by BMPs adopted as a Rule under chapter 120, FAC, or if such an activity is expressly regulated by the USEPA or the USDA."

39. The adoption and enforcement of the provisions of <u>*Resolution*</u> No. 15-1153 conflicts with and stands as an obstacle to the full purpose and intent of §586.10, §586.055, §163.3194(5), §163.3162(3), and §823.14(4b), (6), Fla. Stat.; and §163.3164(14) and §380.04(3e), Fla. Stat., because the Farmer plans to implement his farm operations via their state-adopted-BMP rules.

40. The Farmer made a *Jennings* reservations in state court affirming that he reserves his constitutional claims and to preserve access to the federal courts for subsequent litigation, and the state court's June 23, 2016, order finds that Counts VI, VII, and X are dismissed <u>without prejudice</u>, because these counts seek to state a cause of action for a regulatory taking which the Plaintiff reserves for adjudication by the federal court.

41. On appeal, Florida Second District Court of Appeal, by order dated April 19, 2017, finds that, "The trial court's June 23, 2016, order dismisses <u>without prejudice</u> counts VI, VII, X, XI, and XII, a circumstance that would defeat finality as to these counts," Exhibit 8; and the Appeal Court reviewed the state trial court's final judgement order dated April 24, 2017, without making a final determination on these remaining counts.

42. In §§823.14, 163.3162, 193.461, and 604.001, Fla. Stat., the Florida legislature finds that, "Agricultural lands constitute unique and <u>irreplaceable resources of statewide importance</u>; and that the <u>encouragement</u>, development, improvement, and <u>preservation</u> of agriculture will result in a <u>general benefit to the health, safety, and welfare of the people of the state</u>;" and in §823.14, Fla. Stat., <u>Florida Right to Farm Act</u>, Florida Legislative Findings and Purpose -- states that,

"It is the purpose of this act to protect reasonable agricultural activities conducted on farm land from <u>nuisance</u> suits."

43. Section 163.3163, Fla. Stat., the "Agricultural Land Acknowledgment Act" states that,

Applications for development permits; disclosure and acknowledgment of contiguous sustainable agricultural land.

(2) The Legislature finds that <u>nonagricultural</u> land which neighbors agricultural land may adversely affect agricultural production and farm operations on the agricultural land and may lead to the agricultural land's conversion to urban, suburban, or other nonagricultural uses. The Legislature intends to reduce the occurrence of conflicts between agricultural and nonagricultural land uses and encourage sustainable agricultural land use. <u>The purpose of this section is to ensure that generally accepted agricultural practices will not be subject to interference by residential use of land contiguous to sustainable agricultural land.</u>

4)(a)    Before a political subdivision issues a local land use permit, building permit, or certificate of occupancy for nonagricultural land contiguous to sustainable agricultural land, the political subdivision shall require that, as a condition of issuing the permit or certificate, the applicant for the permit or certificate sign and submit to the political subdivision, in a format that is recordable in the official records of the county in which the political subdivision is located, <u>a written acknowledgment of contiguous sustainable agricultural land.</u>

44. The Farmer has always been desirous of building his family home on his Farm located in Haines City with revenues from his farm but to date he has not earned any revenues; he is educated in agricultural sciences and attended Tuskegee University; he is a Florida licensed and USDA accredited veterinarian; and he has more than forty (40) years experience in the agricultural *field*.

45. Section 604.001(6), Fla. Stat., states that, "The laws and regulations that have caused problems for agricultural production in this state have been due primarily to a <u>lack of adequate and informed consideration</u> of the <u>adverse impact</u> such laws and regulations would have on <u>efficient and profitable</u> agricultural production in this state."

46. Section 163.3162, Fla. Stat.,  states in part that:

(1) LEGISLATIVE FINDINGS AND PURPOSE - The Legislature finds that agricultural lands constitute unique and irreplaceable resources of statewide importance; that the continuation of agricultural activities preserves the landscape and environmental resources of the state, contributes to the increase of tourism, and furthers the economic self-sufficiency of the people of the state; and that the encouragement, development, and improvement of agriculture will result in a general benefit to the health, safety, and welfare of the people of the state. It is the <u>purpose</u> of this act to protect reasonable agricultural activities conducted on farm lands from <u>duplicative regulation</u>.

(3) DUPLICATION OF REGULATION. - Except as otherwise provided in this section and s.487.051 (2), and notwithstanding any other law, including any provision of chapter 125 or this chapter:

(a)    A governmental entity <u>may not exercise any of its powers to adopt</u> or enforce any <u>ordinance</u>, <u>resolution</u>, regulation, rule, or <u>policy</u> to <u>prohibit</u>, restrict, regulate, or otherwise <u>limit</u> an activity of a bona fide farm operation on land classified as agricultural land pursuant to s.193.461, if such activity is regulated through implemented best management practices, interim measures, or regulations adopted as rules under chapter 120 by the Department of Environmental Protection, the Department of Agriculture and Consumer Services, or a water management district as part of a statewide or regional program; or if such activity is expressly regulated by the United States Department of Agriculture, the United States Army Corps of Engineers, or the United States Environmental Protection Agency.

47. Section 586.10, Fla. Stat.,  states in part that:

The authority to regulate and permit honeybee colonies and to adopt rules on the placement and location of honeybee colonies is <u>preempted</u> to the state through the department and supersedes any related ordinance adopted by a county, municipality, or political subdivision thereof.

48. Section 586.055, Fla. Stat., Florida Legislature declares that:

An <u>apiary</u> may be located on lands classified as agricultural under s.193.461, Fla. Stat.

49. Section 604.50, Fla. Stat.,  states in part that:

Any nonresidential farm building or farm fence that is located on lands used for bona fide agricultural purposes is exempt from any county or municipal code or fee.

50. Florida Statutes, §604.001, Public policy with respect to agricultural production states that:

The Legislature declares that: (1) It is the public policy of this state and the purpose of this act to achieve and maintain the production of agricultural commodities for food and fiber as an essential element for the survival of mankind. (2) The production of agricultural commodities in this state is a large and basic industry that is important to the health and welfare of the people and to the economy of the state. (5) It is important to the health and welfare of the people of this state and to the economy of the state that additional problems are not created for growers and ranchers engaged in the Florida agricultural industry by laws and regulations that cause, or tend to cause, agricultural production to become inefficient or unprofitable. (6) The laws and regulations that have caused problems for agricultural production in this state have been due primarily to a lack of adequate and informed consideration of the adverse impact such laws and regulations would have on efficient and profitable agricultural production in this state."

51. City's land development regulations, adopted in July 2012, states as follows:

Sec. 5-2: It shall be unlawful for any person to keep or cause to be kept or to have in his possession or under his custody or control within one hundred (100) yards of any neighboring house, abode, or habitation, within the city limits, any chickens, ducks, guineas, quail, pigeon, partridge or pheasant or the like; and it shall be unlawful for any person to keep or cause to be kept or have in his possession, or under his custody and control, any pig, goat, sheep, horse, cow, cattle, or any tamed or captive wild animal or reptile within the city limits; provided, any person maintaining any such animals or fowl prior to September 7, 1961, shall be permitted to continue to keep the same animals or fowls only so long as they shall maintain the same in an enclosure and in such a manner as not to become a nuisance.

Sec. 5.6.3 (B): Permitted uses in R-2 Residential District:
Family dwellings; public recreational facilities; schools and colleges; houses of worship; and cemeteries.

Sec. 5.6.3 (D4) prohibits any use not specifically permitted by 5.6.3. (B).

Sec. 11-40: The excessive growth of grass (over 12 inches in height) is declared to be a nuisance and menace to the public health, safety, and welfare of the citizens of the city.

Sec 5.2.1 - Residential Districts: All fences shall require a permit and fee; and post and cable, and barb wire fences are prohibited.

**COUNT I: <u>TAKING OF PROPERTY WITHOUT JUST COMPENSATION</u>**

52. The Plaintiff Farmer re-alleges and adopts by reference paragraphs 1 through 51 above.

53. The Farmer brings Count I against the City alleging a taking of his property without just compensation in violation of the Fifth Amendment and of the Fourteenth Amendment to the United States Constitution.

54. The Farmer has a vested statutory right to conduct state-regulated farm operations on his *Greenbelt* Farm and the City totally deprived him of that statutory right prior to August 2015.

55. The City's regulation of the Farmer's state-regulated agricultural purposes on his *Greenbelt* Farm is a "duplication of state regulation," a *conflict-preemption* with the "Limitation on Duplication of Government Regulation" clauses of §§823.14, and163.3162, Fla. Stat.

56. Pursuant to §163.3221(4b5), §163.3164 (14) and §380.04 (3e), Fla. Stat., the City lacks jurisdiction to require, by land development regulations,  a *development* permit for the conduct of  bona fide commercial state-regulated agricultural purposes on the Farmer's Farm.

57. From January 01, 2013, to August 06, 2015, the City, by LDR, prohibited the conduct of all bona fide state-regulated agricultural purposes and commercial farm operations on the Farmer's *Greenbelt* Farm, thus denying him of all economically beneficial and productive use of his property and depriving him of all farm revenues, thereby rendering his farm worthless.

58. The Farmer has a legitimate constitutional and statutory right to use his *Greenbelt* Farm for the conduct of bona fide commercial state-regulated agricultural purposes, he expects to obtain a profit on his commercial farm operations, and to use those profits for financing the construction of his family home, but the City through its alleged regulatory misconduct has injured the Farmer and therefore, he is entitled to compensation.

59. The Farmer has suffered injury-in-fact because of constraints placed on the use of his property by the City through its LDR, and he has suffered injury-in-fact that is concrete and actual

16

because the City's land development regulations have rendered his pre-existing and proposed

bona fide commercial state-regulated farm uses on his *Greenbelt* Farm, arguably unlawful.

60. Section 163.3164 (14), Fla. Stat, states that, "Development" has the same meaning as in

s. 380.04;" and §380.04 (3) Fla. Stat., states that, "The following operations or uses <u>shall not</u>

be taken for the purpose of this chapter to involve "development" as defined in this section:

(e) The use of any land for the purpose of growing plants, crops, trees, and other agricultural

or forestry products; raising livestock; or for other agricultural purposes."

61. In *Mohit I*, Florida courts find that pursuant to §823.14 and §163.3162, Fla. Stat., local

governments, including the City, <u>may not adopt</u> any ordinance, regulation, resolution, rule, or

policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation

on land classified as agricultural where such activity is regulated through implemented best

management practices adopted by the state. Exhibit 1, ¶4

62. The City's regulation of the Farmer's state-BMP-regulated farm operations conflicts with and

stands as an obstacle to the purpose and intent of §§823.14, 163.3162, 193.461, and 604.001,

Fla. Stat., in which Florida legislature finds that, "The encouragement, development,

improvement, and <u>preservation</u> of agriculture will result in a <u>general benefit to the health,</u>

<u>safety, and welfare of the people of the state;</u>" and with §823.14, Fla. Stat., Florida Right to

Farm Act,  where the Florida Legislative Findings and Purpose states that, "It is the purpose

of this act to protect reasonable agricultural activities conducted on farm land from <u>nuisance</u>

suits."

63. The City adopted the challenged LDR in <u>2012</u> and since these regulations <u>restrict</u> the Farmer's

existing and proposed state-regulated farm operations, the restrictive regulations conflict with

the Court's finding in *Wilson* where the Court finds that, "[T]he Right to Farm Act provisions

restricting local government from adopting ordinances restricting farming activities became effective on June 16, 2000."

## COUNT II: VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF THE LAW

64. The Plaintiff Farmer re-alleges and adopts by reference paragraphs 1 through 51 above.

65. The Farmer brings Count II against the City for adopting LDRs which regulate his existing and proposed state-regulated commercial farm activities, an action which: (1) conflicts with and stands as an obstacle to the purpose of state laws, (2) is unreasonable, arbitrary and capricious, (3) has no rational basis, (4) does not result in a general benefit to the health, safety, and welfare of the public (5) makes farm production inefficient and unprofitable, and (6) was intentionally disparately applied to the Plaintiff's agricultural lands compared to similar neighboring agricultural lands, thereby, depriving him of his Farm without due process and equal protection of the law afforded under the Fifth and Fourteenth Amendments to the U. S. Constitution.

66. The challenged City regulations which prohibit, regulate, restrict, and limit the Farmer's existing state-regulated hay crop and his proposed state-regulated apiculture, livestock and poultry, is a "*duplication of state regulation*" of such farm operations.

67. The challenged City regulations have no rational basis and they are arbitrary because the City is proscribed from "duplicating the state regulation" of *state-BMP-regulated* farm operations on the Farmer's Farm pursuant to §823.14, Fla. Stat., Limitation On Duplication of Government Regulation, which states in part that, "a local government may not adopt any ordinance, regulation, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural land pursuant to s. 193.461…."

68. The challenged City regulations have no rational basis and they are arbitrary because the City is expressly proscribed from "duplicating the state regulation" of *state-BMP-regulated* farm

operations on the Farmer's Farm pursuant to §163.3162, Fla. Stat., <u>Duplication of Regulation</u>, which states in part that, "A governmental entity <u>may not exercise any of its powers to adopt or enforce</u> any <u>ordinance</u>, <u>resolution</u>, <u>regulation</u>, or policy to prohibit, restrict, or regulate an activity of a bona fide farm operation on land classified as agricultural land pursuant to s.193.461, if such activity is regulated through implemented best management practices…."

69. The City admitted to the state court that the City's LDR need to be revised to "have those agricultural exceptions *of Chapter 120, FAC,* folded into their regulations" in order for the City's LDR to comply with §§823.14 and 163.3162, Fla. Stat. Exhibit 4.

70. The Florida trial court finds in *Mohit I* that, "Pursuant to §823.14 and §163.3162, Fla. Stat., local governments <u>may not adopt</u> any ordinance, <u>regulation</u>, rule, or policy to prohibit, restrict, regulate, or otherwise limit an activity of a bona fide farm operation on land classified as agricultural where such activity is regulated through implemented best management practices adopted by the state;" Exhibit 1, ¶4, and the phrase "<u>may not use any power to adopt or enforce any regulation to regulate</u>" is explicitly stated in §163.3162(3), Fla. Stat.

71. Florida trial court finds in *Mohit I* that, pursuant to §823.14 and §163.3162, Fla. Stat., local governments, including the City, have the right to regulate agricultural activities <u>but there is a legislative exception</u> for the implementation of state-BMP-regulated farm operations on *Greenbelt* farms like those proposed by the Farmer here; and in *J-II Investments,* Florida courts find that §823.14 and 163.3162, Fla. Stat., is <u>unambiguous</u> in prohibiting a municipality from regulating such farm operations.

72. Prior to August 2015, the City granted no expressed exception or exemption for the conduct of state-BMP-regulated farm operations on *Greenbelt* lands, including the Farmer's Farm.

73. Without an expressed exception or exemption for the conduct of state-BMP-regulated farm operations on *Greenbelt* lands, including the Farmer's Farm, the City's challenged regulations violates, conflict with and stand as an obstacle to the full purpose and intent of §§823.14 and 163.3162, Fla. Stat., and the regulations conflict with the state court findings in *Mohit I.*

74. All farmers, including the Plaintiff, have vested property rights to conduct state-regulated farming activities on their *Greenbelt* lands as guaranteed under §§586.10, 586.055, 604.001, 604.50 163.3221(4b5), 163.3164(14), 380.04(3e), 163.3163, 163.3194 (5), §163.3162 (3), 823.14 (4b), (6), Fla. Stat., and all of these Plaintiff's property rights have been taken away by the City through its adopted regulations although the trial court stated that when the City looks at an application like the Plaintiff's it should say "*what they want to do, we don't have any business regulating.*"

75. The farms on the north side of the Farmer's Farm are located in Polk County, and Chapter 2 - Land Use Districts and Regulations --Polk County LDR states as follows:

   a. Sec. 222 (A): General Farming -- Nothing herein shall prevent the use of any land for agricultural purposes, or the construction and use of buildings or structures incidental to that purpose. No conditional use permit or certificate shall be required for any new agricultural building or structure.

   b. Sec. 222 (D): Farming, General and Animal Grazing -- Nothing herein shall prevent the use of any land for farming, general and animal grazing for bona fide agricultural purposes, or the good faith commercial agricultural use of land, as defined in Section 193.461, F.S. This shall be allowed in all land use classifications.

   c. Livestock and Fowl in Residential Neighborhoods: This section is intended to address the balance between quality of life for residents and responsible animal husbandry in residential neighborhoods. These provisions do not apply to the good faith commercial agricultural use of land (bona fide agricultural purposes), as defined in Section 193.461., F.S.

76. Pursuant to 163.3164(14), Fla. Stat., and the *Love PGI* Court, the City  lacks jurisdiction to regulate, through land development regulations or resolution, the Farmer's existing hay crop

20

and his proposed state-BMP-regulated farm operations  because the statute expressly defines "development" as it pertains to "land development" to **exclude** "the use of <u>any land</u> for the purpose of growing plants, crops, trees, and other agricultural or forestry products; raising livestock; or for other agricultural purposes,"

77. The challenged City regulations infringe upon the purpose, protection, benefits, and vested property rights of *Greenbelt* farmers which are guaranteed under §§586.10, 586.055, 604.001, 604.50, 163.3163, 163.3221(4b5), 163.3164(14), 380.04(3e), and 163.3194 (5), Fla. Stat.

78. The City's regulation of the Farmer's state-BMP-regulated *Greenbelt* farm operations prior to August 2015, did not promote the general health, safety, and welfare of the people of the state as is expressly derived pursuant to state laws from his proposed farm operations, and contrary to state law, the City's regulation of his state-regulated farm operations reduces the production of food, water and oxygen -- elements essential to the survival of mankind.

79. Florida courts <u>did not find</u> that the City has the authority to prohibit, restrict, regulate, or otherwise limit any <u>state-regulated</u> farm operations on the Plaintiff's *Greenbelt* Farm.

80. The Farmer's Farm is similarly situated in pertinent ways to some of his neighbors' farms because all *Greenbelt* farm lands are used for the "purpose of growing plants, crops, trees, and other agricultural or forestry products; raising livestock; and for other agricultural purposes."

81. Regardless of comparative size or any other physical characteristic of *Greenbelt* lands on which state-regulated farm operations are being conducted or proposed, the City is proscribed by §§163.3221(4b5), §163.3164 (14) and 380.04, Fla. Stat., from requiring a <u>development</u> permit, including a conditional use permit, for the conduct of such farm operations.

82. Regardless of comparative size or any other physical characteristic of *Greenbelt* lands on which state-regulated farm operations are being conducted or proposed, the City is expressly

proscribed by §§823.14 and 163.3162, Fla. Stat., from <u>adopting regulations</u> which prohibit, restrict or otherwise limit such farm operations, including livestock, on the Farmer's Farm.

83. The challenged City regulations are not rationally related to the achievement of any legitimate government purpose because the trial Court's transcript states that, Court: "Well, Mr. Reilly, (*City Attorney*), what safeguards, if any, are in the City's ordinances which will accommodate 604.50 and 163.3162 in the sense that if someone applies for something that is otherwise the subject of a best management practice or <u>regulated by the state</u>, you look at that application and say -- **<u>what they want to do, we don't have any business regulating</u>**? -- Do you understand my question? Mr. Reilly: To be candid with the court, I'm not 100 percent sure the staff was up to date on the status of some of the statutes and what they meant. And you know, I will <u>admit</u> that. Court: <u>I'm pretty much 100 percent sure they weren't</u>." Exhibit 4

84. The challenged City regulations are being meanly applied to the Farmer in the adoption of Resolution No. 15-1153, because of his physical attributes and his dispute with the City.

85. The challenged City regulations conflict with the Florida Appeal Court conclusion in *Wilson* where the court finds that, "[T]he Right to Farm Act provisions <u>restricting local government from adopting ordinances restricting farming activities</u> became effective on June 16, <u>2000</u>."

86. The City, in August 2018, dreadfully issued a citation to the Farmer for his state-regulated hay crop being over 12 inches in height and for such excessive growth of the crop being a <u>nuisance</u> even though the City knew that the Farmer's state-regulated hay is commercially harvested at 16 to 18 inches in height and it benefits the health, safety and welfare of the public, and that it is expressly protected from being a nuisance pursuant to §823.14, Fla. Stat.

87. City Officials in July 2014 threatened to shut the Plaintiff's Farm down, impose penalty fines and place a lien on his *Greenbelt* Farm for violation of the City's ordinance although his

existing conduct of state-regulated hay crop was implemented via Rule 5M-6, and the proposed **change** of his farm product to livestock grazing and silviculture was via implementation of their state-adopted Rule 5M-11 and Rule 5I-6.

88. City's Resolution 15-1153, the Conditional Use Permit, limits all state-regulated farm operations on the Plaintiff's *Greenbel*t farm **to ten (10) years**, a provision the Plaintiff <u>did not</u> request on his permit application, and this <u>10-year limit</u> provision violates the "*duplication of state regulation*" clauses of §823.14 and §163.3162, Fla. Stat., and it makes farming inefficient and unprofitable in conflict with §604.001, Fla. Stat.

89. The City's challenged regulations conflict with §604.001, Fla. Stat., which states that: (1) It is the public policy of this state and the purpose of this act to achieve and <u>maintain</u> the production of agricultural commodities for food and fiber as <u>an essential element for the survival of mankind</u>. (5) It is important to the health and welfare of the people of this state and to the economy of the state that <u>additional problems</u> are not created for growers and ranchers engaged in the Florida agricultural industry <u>by laws and regulations</u> that cause, or tend to cause, agricultural production to become <u>inefficient</u> or <u>unprofitable</u>.

90. In 2014, the City arbitrarily prohibited the Farmer from **changing** his existing state-regulated Rule 5M-6 hay crop to state-regulated Rule 5M-11 livestock grazing although his Farm had been in operation for more than 1 year since its established date of operation and it was not a nuisance at the time of its established date of operation; and in *Pasco County v. Tampa Farm Service, Inc.*, 573 So. 2d 909 (Fla. Dist. Ct. App. 1990), the Court finds that pursuant to §823.14(4)(b), Fla. Stat., <u>a farmer is free to change his farm product</u> from chicken to growing strawberries, or allow urban development in the neighborhood "<u>without fear of a lawsuit to abate its activities</u>."

91. Section 823.14(4), Fla. Stat., Florida Right to Farm Act, states in part that, "No farm operation shall become a public or private nuisance as a result of a **change** in the type of farm product being produced, a change in conditions in or around the locality of the farm, or a change brought about to comply with Best Management Practices (*BMP*) adopted by state or federal agencies if such farm has been in operation for 1 year or more since its established date of operation and if it was not a nuisance at the time of its established date of operation.

92. In compliance with the "Limitation on Duplication of Government Regulation" clauses of §§823.14 and 163.3162, Fla. Stat., the City granted the Plaintiff's neighbor a permit to keep an unlimited number of animals and of any species on his farm, Exhibit 9, even though the neighbor, Miguel Groullon, an American Hispanic, stated on his application that he was desirous of keeping 100 animals on his farm, Exhibit 10, but the City, disparately granted a permit to the Plaintiff, an adopted resolution, which specifically restricts the numbers and species of his proposed state-regulated livestock operation – a City act expressly prohibited by these statutes.

93. In 2013, the City prohibited the Farmer from erecting a barbwire fence on his Farm but farm fences are expressly exempted from any municipal code or fee pursuant to §604.50, Fla. Stat.

94. The Ledger, published Saturday July 31, 2010, stated that: "Polk County Property Appraiser's decision to classify certain residential zoned lands as agriculture according to §193.461, surprised officials in cities whose revenue was being affected by reduced taxes;" and in response, Mr. Richard Greenwood, Haines City Community Development Director said "that's ridiculous."

95. The City stands to gain substantial tax revenues by forcing the Plaintiff's farm lands out of agricultural production, about $100.00 for farming versus $1,000,000.00 for homes annually,

so the City created its LDR and the Resolution to cynically evade the cited statutes taking away his right to farm thus forcing him to sell his lands due to inefficiency and unprofitability.

### COUNT III: <u>VIOLATION OF THE FAIR HOUSING ACT</u>

96. The *pro se* Plaintiff Farmer re-alleges and adopts by reference paragraphs 1 through 51 above.

97. The Farmer brings Count III against the City for an unlawful stormwater management assessment charge, unlawfully finding that his state-regulated hay crop was in excess of 12 inches in height and for adopting and enforcing a zoning resolution with provisions which restrict and limit his existing and proposed state-regulated farm operations on his *Greenbelt* Farm because of his race, color of skin and national origin, thereby reducing his farm production and revenues, and with the <u>10-year limit</u> provision the City prevents the construction of his family home on his vacant *Greenbelt* lands in violation of the Federal Fair Housing Act, 42 U.S.C., Sections 3601-3619, Title VIII of the Civil Rights Act.

98. The City's regulations are colorblind but its Officials Bennett, Elaison, Greenwood, and Reilly may not be, and the federal court states that, "Farming is a hard way to make a living. Small farmers operate at the whim of conditions completely beyond their control; weather conditions from year to year and marketable prices of crops to a large extent determine whether an individual farmer will make a profit, barely break even or lose money. The farms of many African American farmers were foreclosed upon, and <u>they were forced out of farming</u>. Those who managed to stay in farming often were subject to humiliation and degradation at the hands of the county commissioners and were forced to stand by powerless, as white farmers received preferential treatment. As one of plaintiffs' lawyers, Mr. J. L. Chestnut, aptly put it, African American farmers "learned the hard way that though the <u>rules and the law may be colorblind, people are not</u>,"" *Pigford v. Glickman*, 206 F.3d 1212 (D.C. Cir. 2000).

99. Since July 2014 to November 2018,  City Officials Bennett, Elaison, Greenwood, and Reilly harbored a discriminatory intent against the Farmer like those municipal officials did in *Pigford*, they threatened to shut his Farm down unless he complied with the City's ordinance by applying for a permit to conduct state-regulated livestock operations on his *Greenbelt* Farm, and they stated that <u>farmers like him</u>, implying due to his skin color and foreign accent, would have their permit denied unless they specify a *reasonable number* of each livestock species on their application, and they knew that the permit requirement conflicted with Florida statutes because the Farmer wrote it at the top of the permit application in their presence.

100. The Farmer belongs to the protected classes of the Fair Housing Act by virtue of his race, color and national origin; his skin is dark in color, he speaks with a foreign accent, and he is originally from the Caribbean; and he believes that the alleged discriminatory misconduct by the City was solely because of these virtues of his.

101. The Farmer believes that because of his race and national origin, the City on August 30, 2018, served him with a notice for being in violation of the City ordinance, finding that his state-regulated hay crop was in excess of the ordinance-stipulated 12 inches in height, an act by the City that is expressly prohibited by §§823.14 and 163.3162, Fla. Stat. Exhibit III-a

102. The Farmer believes that because of his race and national origin, the City on November 1, 2018, charged him an assessment of $53.00 for stormwater management on his *Greenbelt* Farm where his existing hay crop was being conducted via BMPs adopted as a rule under Ch. 120, FAC,  an act by the City that violates §§163.3162(3c), and 373.406(2), Fla. Stat. Exhibit III-b

103. Since 2012, the City prohibited the conduct of agriculture on the Farm and the City Official responsible for adopting the City's land development regulations, Mr. Greenwood, proclaimed

that, "The classification of residential zoned lands as agriculture is <u>ridiculous</u>," so the City in 2012 purposely created regulations to discriminate against certain farmers like the Plaintiff.

104.   <u>The Ledger</u>, published Saturday July 31, 2010, stated that: "Polk County Property Appraiser's decision to classify certain residential zoned lands as agriculture according to §193.461, surprised officials in cities whose revenue was being affected by reduced taxes;" and in response, Mr. Richard Greenwood, Haines City Community Development Director said "<u>that's ridiculous;</u>" Mr. Greenwood said the "City's land development regulations don't allow agricultural operations in residential areas;" and the Property Appraiser's decision was based on the Supreme Court of Florida conclusions in *Schultz*.

105.   In compliance with the "Limitation on Duplication of Government Regulation" clauses of §§823.14 and 163.3162, Fla. Stat., the City granted the Plaintiff's neighbor a permit to keep an <u>unlimited</u> number of animals and of <u>any species</u> on his farm, Exhibit 9, even though the neighbor, Miguel Groullon, an American Hispanic, stated on his application that he was desirous of keeping 100 animals on his farm, Exhibit 10, but the City and Mr. Reilly granted a permit to the Plaintiff, an <u>adopted resolution</u>, which specifically <u>restricts</u> the numbers and species of his proposed <u>state-regulated</u> livestock operation – a City act expressly prohibited by these statutes today and an act to discriminate against him because of his physical attributes.

106.   The daily <u>enforcement</u> of the alleged discriminatory restrictive provisions of City Resolution 15-1153 on the Plaintiff's proposed conduct of state-regulated livestock operations is a continual unlawful act, an act that conflicts with and stands as an obstacle to §163.3162, Fla. Stat., a law which Florida courts find to be <u>plain and unambiguous</u> in prohibiting municipalities from restricting farm operations.

107.    Today, the City by  Resolution 15-1153 disparately prohibits the Farmer, compared to Mr. Groullon, from keeping six (6) horses through implementing Rule 5M-14, FAC, on his *Greenbelt* Farm, an act by the City that is expressly prohibited by state laws.

108.    The City granted Mr. Groullon permission to keep any species of animals on his farm lands, including horses, poultry, fish, and bees but today the City does not permit through its Resolution 15-1153 and otherwise, state-regulated apiculture and poultry on the Plaintiff's *Greenbelt* Farm because of his physical attributes.

109.    Pursuant to *Love PGI* and §§586.10, 586.055, 604.001, 604.50, 163.3163, 163.3221(4b5), 163.3164(14), 380.04(3e), and 163.3194 (5), Fla. Stat., the City lacks jurisdiction <u>to adopt or enforce</u> the provisions of the alleged discriminatory conditional use permit which regulate "<u>*development*</u>" and/or "<u>*land development*</u>" of the Plaintiff's vacant *Greenbelt* lands.

110.    The *pro se* Farmer timely filed his discrimination complaint with Florida Commission on Human Relations, the Commission timely converted his complaint to an FHA complaint with the U.S. Department of Housing on August 26, 2016; the Farmer periodically contacted the Department regarding the status of his complaint during 2016-2017 and was told that it was pending and he would be notified on its completion; but on August 2, 2018, the City Attorney wrote to the Department also stating that he had not been informed of their decision, so then HUD sent its decision to the Farmer after the City Attorney requested it. Exhibit – HUD.

111.    Having not heard from HUD during 2016-2017, the *pro se* Farmer filed his FHA complaint with this Court on July 26, 2018.

112.    City Resolution No. 15-1153 which  restricts livestock  numbers and species and stipulates a <u>10-year limit</u> for all farm operations, is not authorized and today it is inconsistent with the <u>pre-emption</u> and <u>exclusion</u> clauses for state-regulated farm operations conducted and proposed

by the Farmer on his *Greenbelt* lands as prescribed in §§586.10, 586.055, 604.001, 604.50 163.3221(4b5), 163.3164(14), 380.04(3e), 163.3163, 163.3194 (5), §163.3162 (3), and 823.14 (4b), (6), Fla. Stat.; and the trial court stated that when the City looks at an application like the Plaintiff's, it should say "*what they want to do, we don't have any business regulating*."

113.    Pursuant to §163.3221(4b5), §163.3164 (14) and §380.04 (3e), Fla. Stat., and in accordance with Florida courts findings in *Love PGI*, the City lacks jurisdiction to require a conditional use _development_ permit, including Resolution 15-1153, for the Farmer to conduct bona fide commercial state-regulated livestock operations on his *Greenbelt* Farm.

114.    Sec. 5.6.3. (E) of the City's LDR requires a "conditional use development permit" for the conduct of four specific agricultural purposes namely: (a) citrus, (b) horticulture, (c) forestry, and (d) grazing, pasture and growing hay; but these four farm operations are each regulated by rules adopted under Ch. 120, FAC, namely: (a) citrus by Rule 5M-16, (b) horticulture by Rule 5M-6, (c) forestry by Rule 5I-6, and (d) livestock grazing by Rule 5M-11; hay by 5M-8, and when so implemented on the Plaintiff's *Greenbelt* Farm, the City is statutorily prohibited from regulating them.

115.    The Plaintiff, under protest arguing that it was in violation of state laws, applied for a permit to conduct his existing and proposed farm operations specifying under duress the number and species of animals, but regardless of the number of animals listed on his application, the City and Attorney Reilly , *when approving such a permit*, is expressly proscribed by §§823.14 and 163.3162, Fla. Stat., from prohibiting, restricting, or limiting any of his proposed state-regulated farm operations, and the state trial states that, when the City looks at such an application is should say "*what they want to do, we don't have any business regulating*."

116.   The Plaintiff <u>wrote</u> at the top of the permit application that the requirement for a permit to <u>change</u> his farm product from hay to livestock operations on his *Greenbelt* Farm is in violation of state law, and in *Pasco County* the Court finds that pursuant to §823.14, Fla. Stat., <u>a farmer is free to change his farm product without fear of a lawsuit to abate its activities</u>.

117.   Since July 2014, the City prohibits the Farmer from **<u>changing</u>** his existing state-regulated Rule 5M-6 hay crop to state-regulated Rule 5M-11 livestock grazing although his *Greenbelt* Farm had been in operation for more than 1 year since its established date of operation and it was not a nuisance at the time of its established date of operation.

118.   City's Resolution 15-1153, the Conditional Use Permit approved by Attorney Reilly, limits all state-regulated farm operations on the Plaintiff's *Greenbel*t farm <u>to ten (10) years</u>, a provision the Plaintiff <u>did not</u> request on his permit application, and this 10-year <u>limit</u> is in violation of the *duplication of state regulation* clauses of §823.14 and §163.3162, Fla. Stat., and the Plaintiff belies that Mr. Reilly imposed this provision because of his physical attributes.

119.   The alleged "*conflict preemption*" of the ten <u>(10) year limit</u> of the Conditional use Permit currently prevents capital expenditure and return on investment of barns, wells, irrigation, fences, etc., which exceed thirty (30) years, and many of the proposed farm products like citrus, forestry and equine breeding programs span twenty (20) to fifty (50) years, making the Farmer's existing and proposed *Greenbelt* farming non-viable, inefficient and unprofitable.

120.   Florida courts find that pursuant to §823.14 and §163.3162, Fla. Stat., the City is proscribed from <u>adopting</u> any resolution, including Resolution 15-1153, the Conditional Use Permit, when it <u>prohibits</u> USEPA regulated pigs, <u>limits</u> state-regulated horses to 5, and <u>restricts</u> all state-regulated farm operations to 10 years, and Florida courts find in *J-II Investments* that §823.14

and §163.3162, Fla. Stat., is <u>unambiguous</u> in prohibiting municipalities from regulating state-regulated farm operations on *Greenbelt* farms, including the Plaintiff's Farm.

121.     Florida courts <u>did not find</u> that the City can prohibit, restrict, regulate, or otherwise limit any <u>state-regulated farm operations</u> on the Plaintiff's *Greenbelt* Farm.

122.     In accordance with Florida courts finding pursuant to §823.14 and 163.3162, Fla. Stat., the City is <u>explicitly proscribed</u> from <u>adopting</u> any <u>*resolution*</u> to prohibit, restrict, or limit the Farmer's proposed implementation of <u>state-regulated</u> farm operations on his *Greenbelt* Farm, making City Resolution 15-1153, the Conditional Use Permit, a continuing violation into the present of the Plaintiff's "rights to farm" guaranteed and protected by these state laws.

123.     Pursuant to §163.3162, Fla. Stat., the City is <u>expressly</u> proscribed from <u>enforcing</u> any <u>resolution</u> to <u>restrict or limit</u> the Farmer's proposed conduct of state-regulated livestock operations on his *Greenbelt* Farm, making City Resolution 15-1153 a continuing violation into the present of the Plaintiff's rights to farm guaranteed  and protected by state law.

124.     Pursuant to §§823.14 and 163.3162, Fla. Stat., regardless of **<u>size</u>** of the *Greenbelt* farm, the City is proscribed from restricting or limiting the farm product, including livestock, on the Farm; and a small farm may sustain more animals than a larger farm depending on agricultural management practices, market conditions, wetlands, topography, animal breed, age, meat, milk or egg production, forage, capital, labor, etc., and the trial court stated that when the City looks at an  application like the Plaintiff's it should say "*what they want to do, we don't have any business regulating*."

125.     The City Officials Bennett, Elaison, Greenwood, and Reilly knew that by restricting the number and species of animals on the Plaintiff's *Greenbelt* farm that it would deny him profits to finance the construction of his home, they knew the <u>10-year limit</u> on all his farm uses would

economically strangle capital investment and economic viability of his farm and thus prevent him from building a home on vacant lands, and it would eventually force him because of how he looks and sound to sell his farm lands before he could build a home on it.

### RELIEF

WHEREFORE, the Plaintiff seeks judgment for (1) just compensation for the taking of his property, (2) compensation for loss of farm income (3) damages for violation of his due process and equal protection of the law, (4) damages for discrimination against him in constructing his home, (5) refund of all stormwater assessments, (6) damages for boarding his breeding mare at another farm,  (7) damages for mental pain, anguish, and suffering, (8) punitive damages, and (9) any other relief determined by this honorable court to be fair and just.

/s/ *Benedict Mohit*
Benedict Mohit, Pro Se,
1520 Sunrise Plaza Drive,
Clermont, Fl. 34714.
Tel: 407-579-8337
Email: dvmohits@gmail.com

I HEREBY CERTIFY that on this day I electronically filed the forgoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Ms. Linda Edwards and Ms. Kayla Rady, Attorneys for the City of Haines City.

/s/ *Benedict Mohit*
Benedict Mohit, Pro Se,