UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENEDICT MOHIT,

    Plaintiff,

v.   Case No.: 8:18-cv-1775-T-33JSS

CITY OF HAINES CITY,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant City of Haines City's Motion for Summary Judgment (Doc. # 50), filed on February 20, 2020. Plaintiff Benedict Mohit filed a Motion for Summary Judgment on February 21, 2020 (Doc. # 54) and an Amended Motion for Summary Judgment on March 26, 2020. (Doc. # 68).[1] The parties have each responded. (Doc. ## 60, 67). For the reasons detailed below, the City's Motion is granted and Mohit's Motion is denied as set forth herein.

---

[1] On April 28, 2020, this Court granted Mohit's motion to amend, such that it considered Mohit's amended summary judgment motion (Doc. # 68) as his operative motion.

1

I.   **Background**

   A.   **The Property and the Conditional Use Permit**

The parties' dispute revolves around a farm owned by Mohit (the Property). The parties agree that the Property is zoned R-2, or residential, by the City. (Doc. # 51 at 1; Doc. # 43 at 1).

Mohit purchased the property in May 2012. (Doc. # 50-17). In January 2013, Mohit was approved to practice commercial agriculture on the Property. (Doc. # 51 at 1; Doc. # 43 at 2; Doc. # 54-5 at 1). The parties agree that, in July 2014, Mohit met with City officials because he wanted to add livestock to his existing hay crop operations. (Doc. # 51 at 1; Doc. # 43 at 10; Doc. # 54-5 at 2). City officials, however, insisted that Mohit needed a permit from the City in order to do so. (Id.).

Mohit objected and filed a lawsuit in October 2014 in state court against the City for adopting the Land Development Regulations (LDRs) that prohibited his agricultural activities. (Doc. # 51 at 2; Doc. # 43 at 11). In May 2015, the state court directed Mohit to submit to the City an application for a conditional use permit to pursue livestock farming on his existing farm. (Doc. # 50-2). Mohit then submitted the application, as directed by the Court. (Doc. #

50-3). In the application, Mohit represented that his Property encompassed 20 acres, was presently zoned R-2 (residential), and that the current use of the Property was "agricultural – hay production and horses." (Id. at 1). The proposed uses of the Property were "crops and hay; livestock and companion animals; associated buildings and water well and fences; . . . timber; horticulture; [and] plant nursery." (Id.). On the application, Mohit wrote: "estimated number of animals: cattle (20) twenty, on a rotational basis; goats (20) twenty; [and] horses (5) five. Excluding swine; feed lot operation." (Id.).

On August 6, 2015, the City Commission approved Resolution No. 15-1153, granting Mohit a conditional use permit (the Conditional Use Permit). (Doc. # 50-4). Consistent with Mohit's application, the Conditional Use Permit allowed Mohit to keep 20 cattle (on a rotational basis), 20 goats, and 5 horses on the Property. (Id. at 2-3). It prohibited Mohit from keeping swine or maintaining feed lot operations on the Property. (Id. at 3). And it required Mohit to reapply for another permit in 10 years. (Id.).

**B.   State Court Litigation**

In the meantime, Mohit again sued the City in state court. According to his third amended complaint, filed on March 31, 2016, Mohit alleged, among other things, that the City's LDRs and the Conditional Use Permit violated various Florida statutes, including the Right to Farm Act and the Florida Agricultural Lands and Practices Act, that the Conditional Use Permit prevented Mohit from putting his Property to its best use, and negligence. (Doc. # 50-50). The third amended complaint also included a claim under the Takings Clause of the Fifth Amendment (Count VII), alleging that the City, by prohibiting Mohit from pursuing "all farm production activities on his farm," deprived him of all, or substantially all, economically beneficial and productive uses of his Property. (Id. at 17). Mohit brought a similar claim as Count X of the operative complaint, labeled "Loss of Farm Revenues." (Id. at 18).

On June 23, 2016, the state trial court granted in part the City's Motion to Dismiss the Third Amended Complaint. (Doc. # 50-9). In doing so, the state trial court dismissed without prejudice Plaintiff's federal and state law takings claims (Counts VI, VII, and X), stating as follows:

4

> Counts VI, VII, and X are **DISMISSED** without prejudice. These Counts apparently seek to state a cause of action for regulatory taking yet fall short of the standard for pleadings set forth in Fla. R. Civ. Pro. 1.110 and for the apparent irreconcilable inconsistency with Paragraph 40[2] of Plaintiff's Third Amended Complaint. This Court may not apprise a pro se litigant as to the extent of his weak points and may not assist him to the detriment of the opposing party.

(Id. at 1) (emphasis in original).

On November 18, 2016, the state court entered an order granting the City summary judgment on all of Mohit's claims related to the Florida Right to Farm Act (Chapter 823, Florida Statutes) and the Florida Agricultural Lands and Practices Act (Chapter 193, Florida Statutes), concluding that the two statutes stand separately and have "no relationship at all." (Doc. # 50-6). Specifically, the state court found that the City's LDRs provide that agricultural activities can or must be permitted with a conditional use permit, and thus are not strictly prohibited. (Id. at 2).

On March 16, 2017, the state court disposed of Mohit's remaining claims. (Doc. # 50-7). On April 24, 2017, the state

---

[2] In Paragraph 40 of the third amended complaint, Mohit alleged that he "wish[ed] to reserve his constitutional claims and to preserve access to the federal courts for subsequent litigation by making a reservation on the state record as to the disposition of the entire case by the state courts." (Doc. # 50-5 at ¶ 40).

5

court entered final judgment in favor of the City. (Doc. # 50-8). In the months that followed, the Florida Second District Court of Appeal per curiam affirmed and the Florida Supreme Court dismissed the case for lack of jurisdiction. (Doc. ## 50-10, 50-11).

Undeterred, on May 29, 2018, Mohit filed a new action in state court, seeking a declaratory judgment against the City "for the unlawful adoption and subsequent enforcement of land development regulations which prohibit, restrict, regulate, or limit bona fide (commercial) bee, sheep, fish, crop, and poultry farming on Mohit's farm, which is classified as agricultural lands pursuant to § 193.461, Fla. Stat. (Greenbelt law)[.]" (Doc. # 50-12 at 1). On October 1, 2018, the state court granted the City's summary judgment motion in the declaratory judgment matter. (Doc. # 50-13).

### C. Procedural History

On July 20, 2018, Mohit filed the instant lawsuit in federal court. (Doc. # 1). Following an order dismissing his first amended complaint (Doc. # 42), Mohit filed a second amended complaint. (Doc. # 43). In the second amended complaint, Mohit described the events pertaining to the LDRs and the Conditional Use Permit and raised three causes of action: (1) taking of property without just compensation, in

violation of the Fifth Amendment (Count I); (2) violation of due process and equal protection under the United States Constitution (Count II); and (3) violation of the federal Fair Housing Act (Count III). (Id.).

On March 4, 2020, this Court granted the City's motion to dismiss and dismissed Counts II and III with prejudice. (Doc. # 58). Thus, Mohit's federal Takings Clause claim, Count I, is the only claim remaining in this litigation. The parties have filed cross motions for summary judgment, to which the opposing party has replied.[3] (Doc. ## 50, 60, 67, 68). The Motions are ripe for review.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude

---

[3] Pursuant to the Case Management and Scheduling Order, the parties filed their motions for summary judgment before this Court entered its order on the City's motion to dismiss. To the extent the parties' Motions seek summary judgment on Counts II or III, the Motions are denied as moot.

a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to

8

be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538–39 (5th Cir. 2004); <u>see also</u> <u>United States v. Oakley</u>, 744 F.2d 1553, 1555 (11th Cir. 1984)("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is

9

entitled to judgment as a matter of law on facts that are not genuinely disputed."(quotation omitted)).

### III. **Analysis**

Under the Takings Clause of the Fifth Amendment, "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 322 (2002). However, "no magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area." Ark. Game & Fish Comm'n v. United States, 568 U.S. 23, 31 (2012). Indeed, this area of the law has been characterized by "ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances." Tahoe-Sierra, 535 U.S. at 322.

The Supreme Court has drawn "some bright lines" in this area of jurisprudence, "notably, the rule that a permanent physical occupation of property authorized by government is a taking," as is "a regulation that permanently requires a property owner to sacrifice all economically beneficial uses

10

of his or her land." Id. at 31-32. Here, Mohit is not alleging a physical occupation of his property. Rather, his takings claim centers on what he considers to be improper government regulation of his property.

If a "regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). "The law of regulatory takings aims to identify regulatory actions that are functionally equivalent to a classic taking." Hillcrest Prop., LLP v. Pasco Cty., 731 F. Supp. 2d 1288, 1294-95 (M.D. Fla. 2010).

The Supreme Court has identified two guidelines relevant for determining when a government regulation "is so onerous that it constitutes a taking." Murr v. Wisconsin, 137 S. Ct. 1933, 1942 (2017). First, "a regulation which 'denies all economically beneficial or productive use of land' will require compensation under the Takings Clause." Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992)). "Second, when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has

11

interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Murr, 137 S. Ct. at 1943 (citing Palazzolo, 533 U.S. at 617).

While the City argues that Mohit "simply has no claim" because he acquired title to the Property more than forty years after it was zoned R-2 residential (Doc. # 50 at 3-4), the Supreme Court has held that acquisition of title after the effective date of the challenged regulations will not bar a regulatory takings claim. Palazzolo, 533 U.S. at 626-28.

On the opposite side of the spectrum, Mohit argues that federal regulatory takings cases do not apply to this case because the proposed uses of land in those cases "are not afforded the statutory protection from local land development regulations as [those] afforded for Greenbelt farming[.]" (Doc. # 67 at 11). The Court disagrees. The Takings Clause directly reaches the confluence of real property rights and governmental needs at issue in this case. See Murr, 137 S. Ct. at 1943 (explaining that courts must carefully balance an "individual's right to retain the interests and exercise the freedoms at the core of private property ownership" with the government's "well-established power to adjust rights for the public good" (internal quotation marks and alteration omitted)); see also, e.g., Knick v. Twp. of Scott, 139 S. Ct.

2162, 2167 (2019) (in case involving municipal ordinance that infringed on property rights of rural farm owner, holding that a property owner "has an actionable Fifth Amendment takings claim when the government takes his property without paying for it"). Thus, the Court will continue to the Takings Clause analysis.

Here, the record evidence is undisputed that, per the Conditional Use Permit, Mohit may grow hay and keep certain animals on his Property. (Doc. # 50-4). That these uses may not produce the **most** profit or constitute what Mohit considers the "best" use of his property does not change this fact: Neither the City's LDRs, including its R-2 zoning regulation, nor the Conditional Use Permit have deprived Mohit of **all** economically beneficial or productive use of his land. See Lucas, 505 U.S. at 1019 ("[W]hen the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking."). Here, the City's LDRs do not affirmatively prohibit farming or agricultural uses. To the contrary, the LDRs expressly carve out and allow, via a Conditional Use Permit, agricultural uses for residents in R2-zoned property. Thus, the City's regulations are not a complete taking under Lucas.

The Court now turns to the fact-specific, "complex of factors" inquiry for regulatory takings cases delineated by the Supreme Court.

First, the Court must consider the economic impact of the regulations on Mohit, including the extent to which the regulations have interfered with Mohit's distinct investment-backed expectations. Courts may look at the totality of the circumstances when assessing a claimant's expectations, including the state of regulatory affairs at the time of acquisition and "the nature and extent of permitted development under the regulatory regime vis-à-vis the development sought by claimant." Palazzolo, 533 U.S. at 634.

In 2012, Mohit purchased the Property intending to use it as a farm. (Doc. # 43 at 2). Early the next year, the State approved the land for agricultural activities. It is undisputed that Mohit has been able to perform hay cultivation on the land and, in August 2015, was approved for a Conditional Use Permit which allowed him to keep certain livestock on the Property as well. It is worth noting that Mohit's permit application mirrors what is allowed under the Conditional Use Permit itself. In other words, the City granted Mohit exactly what he requested in the Conditional

Use Permit. Thus, it is difficult to say how Mohit's expectations were not met.

The Court is aware that, in July 2012, one of Mohit's neighbors, Miguel Grullon, also applied for a conditional use permit, in which he requested permission to have "roughly 100 animals," comprised of goats and cattle on his property, along with buildings and fences to house the animals. (Doc. # 50-15). This application was approved. (Doc. # 54-1 at 16-18). To the extent Grullon's permit may have informed Mohit's expectations, however, the Court notes that Mohit did not request permission to have 100 animals on his farm, as did Grullon. Rather, he requested and received permission to have up to 20 cattle on a rotational basis, 20 goats, and 5 horses.

Additionally, this Court must assess the character of the governmental action. "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 125 (1978). In instances in which a state tribunal reasonably concluded that "the health, safety, morals, or general welfare" would be promoted by prohibiting particular

15

contemplated uses of land, the Supreme Court has upheld land-use regulations that destroyed or adversely affected recognized real property interests. Zoning laws are, of course, the classic example . . . which have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property." Id. at 125–26.

Here, the City enacted certain LDRs that reflect a choice to set aside and zone certain areas as residential areas, but the City also allows exception to this zoning and allows agricultural uses of such land through the use of conditional use permits. This is not akin to a physical invasion of the property, nor it is the sort of overly burdensome regulation that robbed Mohit of all economically beneficial uses of his Property. In sum, the City did not go too far in enacting the LDRs or the Conditional Use Permit, and Mohit's Takings Clause claim fails. See Corn v. City of Lauderdale Lakes, 95 F.3d 1066, 1072 (11th Cir. 1996) ("Whether a landowner has been deprived of all or substantially all economically viable use of his property, either permanently or temporarily, is an essentially ad hoc inquiry into whether the regulation goes 'too far.'").

Rather, the Court agrees with the City that the crux of Mohit's argument is that the City cannot enact regulations

16

that regulate agricultural or farming activities because such regulations violate Florida law. Not only does such an argument fail to implicate the multi-factor factual analysis called for in scrutinizing a takings claim, the state court has already squarely addressed and rejected these arguments.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant City of Haines City's Motion for Summary Judgment (Doc. # 50) is **GRANTED** as set forth herein.

(2) Plaintiff Benedict Mohit's Amended Motion for Summary Judgment (Doc. # 68) is **DENIED.**

(3) The Clerk is directed to terminate all pending deadlines and motions and thereafter **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of May, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE